UNITED STATES of America, Plaintiff–Appellee,

v.

**Thomas J. ROGERS, Jr., Defendant–Appellant.**

No. 91–5106.

United States Court of Appeals, Fourth Circuit.

Argued March 6, 1992.

Decided April 24, 1992.

---

Michael Morchower, Morchower, Luxton & Whaley, Richmond, Va., argued, for defendant-appellant.

Kenneth Martin Sorenson, Asst. U.S. Atty., Roanoke, Va., argued (E. Montgomery Tucker, U.S. Atty., on brief), for plaintiff-appellee.

Before SPROUSE and WILKINSON, Circuit Judges, and MACKENZIE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

WILKINSON, Circuit Judge:

Thomas Rogers appeals his conviction under 31 U.S.C. § 5324(3) for structuring currency transactions with the purpose of evading a financial institution's obligation to report all such transactions exceeding $10,000. We think that there was ample evidence that Rogers acted with the purpose of evading these reporting requirements, and we reject his contention that the prosecution in a criminal structuring case must further prove that the defendant knew that such structuring was illegal. We therefore affirm the conviction.

### I.

Defendant Rogers decided in 1988 to purchase a house. To pay for this house, Rogers converted $149,352.77 in currency and $1000 in checks into eighteen cashier's checks totalling $150,352.77. Rogers purchased these eighteen checks at five Sovran Bank branches in the Richmond, Virginia area between July 11 and July 28, 1988. Each of the checks was issued in an amount less than $10,000, thirteen of them for $9000, and the remainder in amounts ranging from $6000 to $8,352.77. Rogers' admitted reason for purchasing the checks in these amounts was to avoid the requirement that a bank file a report to the Internal Revenue Service of any currency transaction exceeding $10,000. At least a portion of the structured currency represented income from gambling activities. Having experienced significant prior difficulty with the IRS, Rogers did not want his name reported to that agency.

Rogers was indicted for knowingly and unlawfully structuring the eighteen transactions for the purpose of evading the currency transaction reporting requirements of 31 U.S.C. § 5313(a), in violation of 31 U.S.C. § 5324(3). A trial was conducted on February 26, 1991, at the conclusion of which the jury returned a verdict of guilty. Rogers now appeals that conviction.

### II.

Federal law requires that a financial institution file with the Commissioner of Internal Revenue a report of all currency transactions involving more than $10,000. 31 U.S.C. § 5313(a); 31 C.F.R. §§ 103.-22(a)(1), 103.27(4) (1991). This requirement, which seeks to aid the government in its criminal investigations, is based upon the belief that "[t]he deposit and withdrawal of large amounts of currency or its equivalent ... under unusual circumstances may betray a criminal activity." H.R.Rep. No. 975, 91st Cong., 2d Sess. 11, *reprinted in* 1970 U.S.C.C.A.N. 4394, 4396. Federal law also forbids any individual from "structur[ing] or assist[ing] in structuring" currency transactions with one or

more financial institutions "for the purpose of evading the reporting requirements of section 5313(a)." 31 U.S.C. § 5324(3). An individual who willfully violates the anti-structuring provision is subject to both criminal and civil fines as well as imprisonment. 31 U.S.C. §§ 5321(a)(4), 5322(a). In addition, any real or personal property involved in a violation of § 5324 is subject to civil forfeiture to the United States. 18 U.S.C. § 981(a)(1)(A).

Rogers contends that in order to willfully violate § 5324(3), a defendant must have knowledge that structuring transactions to evade the reporting requirement is illegal. He therefore argues that the district court erred in instructing the jury that proof of such knowledge was not required to convict. This circuit has previously held in a case involving civil forfeiture that "the only scienter required for a violation of § 5324(3) is that the violating party 'had knowledge of the reporting requirements and acted to avoid them.'" *United States v. Wollman*, 945 F.2d 79, 81 (4th Cir.1991) (quoting *United States v. 316 Units of Municipal Securities in the Name of Efrain Gonzalez*, 725 F.Supp. 172, 179 (S.D.N.Y.1989)). We have not previously addressed the question of whether proof of a *willful* violation of § 5324(3), as set forth in § 5322(a), requires the additional showing that a party knew that the structuring of the transactions was illegal. We now hold that it does not.

Interpreting the term "willful" to require proof that the defendant knew that his conduct ran afoul of the law would put us at odds with some basic assumptions. "Where the law imposes criminal liability for certain conduct, a requirement that the conduct be 'willful' generally 'means no more than that the person charged with the duty knows what he is doing. It does not mean that, in addition, he must suppose that he is breaking the law.'" *United States v. Scanio*, 900 F.2d 485, 489 (2d Cir.1990) (quoting *American Sur. Co. v. Sullivan*, 7 F.2d 605, 606 (2d Cir.1925)). This interpretation of "willful" runs parallel to the rule that "ignorance of the law is no excuse." That rule is "deeply rooted in the American legal system," *Cheek v.*

*United States,* ── U.S. ──, 111 S.Ct. 604, 609, 112 L.Ed.2d 617 (1991), and exceptions to it must not be casually created.

It is true that the Supreme Court recently reaffirmed its view that, in criminal tax cases, proof of "willfulness" requires a showing that defendant knew that the conduct at issue was illegal. *See id.* 111 S.Ct. at 609–10. Rogers' primary contention on appeal is that the interpretation of "willful" in the tax laws should be extended to this offense. We reject this argument and join the two other circuits that have refused to apply the *Cheek* exception to cases brought under the anti-structuring law. *See United States v. Brown*, 954 F.2d 1563, 1569 n. 2 (11th Cir.1992); *United States v. Dashney*, 937 F.2d 532, 540 (10th Cir.1991); *see also United States v. Donovan*, 1992 WL 18217, at *4, n. 4 (1st Cir. Feb. 6, 1992) (rejecting extension of *Cheek* exception to case brought under § 5322(a) for violation of currency reporting requirements by bank officer). In *Cheek*, the rationale for the Court's exception to the traditional interpretation of "willful" was the complexity of the tax code, which often makes it difficult for the average citizen to know what the law requires. *Cheek*, 111 S.Ct. at 609–10. That sort of complexity simply is not present in cases involving the "straightforward currency reporting requirements." *Dashney*, 937 F.2d at 540. Like the court in *Dashney*, we believe that the circumstances justifying an adoption of the *Cheek* definition of "willfulness" are limited, and this case does not present them.

Congress, of course, has the power to require proof that the defendant knew his actions were illegal, but we find no basis to conclude that Congress made such a choice here. Neither the statutory language nor an especial need for fair warning in a field of unusual complexity suggests that Congress believed that knowledge of illegality must be proved. The legislative history is not particularly helpful, but what there is affords no basis to conclude that knowledge of illegality is an element of the offense. Indeed, the Senate Committee re-

port speaks of a specific intent to evade the reporting requirements, not of a specific knowledge that structuring transactions is unlawful. S.Rep. No. 433, 99th Cong., 2d Sess. 22 (1986); *see also Dashney*, 937 F.2d at 537–38 (canvassing the legislative history). In requiring both that a defendant know of the reporting requirements and act to evade them, Congress insured that the innocent and the unwitting would not be ensnared in the statutory net. *See Scanio*, 900 F.2d at 491. The layering of further requirements on a § 5324(3) conviction thus appears to be superfluous.

We conclude that a criminal conviction for willfully violating § 5324(3) may be sustained as long as the prosecution proves that the defendant had knowledge of the currency reporting requirements and acted to avoid them. No other specific intent need be shown. The defendant, therefore, was not entitled to any jury instruction regarding knowledge of illegality. Our conclusion on this point is one that is generally shared. *Brown*, 954 F.2d at 1569; *Dashney*, 937 F.2d at 537–40; *United States v. Hoyland*, 914 F.2d 1125, 1129–30 (9th Cir.1990); *Scanio*, 900 F.2d at 491.*

### III.

For the foregoing reasons, the conviction of appellant is

AFFIRMED.

---

* We also reject appellant's contention that he was entitled to a judgment of acquittal because he relied in good faith on the advice of counsel. At no point in the record is it clear that Rogers ever disclosed to his attorney, William Mason, exactly how he intended to structure his currency transactions, nor is there evidence that Mason ever advised him that his proposed plan was legally permissible. The conclusory assertion made by Rogers that he had made a full disclosure to Mason of all relevant facts was obviously one not taken at face value by the jury.