**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 91-4703
(Summary Calendar)
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JIMMY BEAUMONT,

Defendant-Appellant.

_____
Appeal from the United States District Court
for the Eastern District of Texas
_____
(August 27, 1992)

Before KING, EMILIO M. GARZA, and DeMOSS, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Jimmy Beaumont and three other defendants were convicted of "structuring"[1] a financial transaction with intent to evade the reporting requirements of 31 U.S.C. § 5313(a)--a violation of 31 U.S.C. § 5324(3). Beaumont appeals this conviction for structuring and, finding that the district court committed neither plain error in its jury instruction on structuring nor reversible error in refusing to sever Beaumont's case from that of his co-defendants, we affirm.

_____

[1]     *See infra* note 9.

1

## I

## A

On March 26, 1990, Beaumont and Hersman entered the Orange Bank in Orange, Texas to purchase cashier's checks. Beaumont purchased a cashier's check in the amount of $9,500, and Hersman purchased one in the amount of $9,000. Both Beaumont and Hersman made their purchases in cash and used bills of small denominations, wrapped in rubber bands and contained in a plastic "ziplock" sandwich bag. When Hersman found that he was approximately $500 short of funds to purchase this $9,000 cashier's check, Beaumont paid the difference for him.

The following day, Beaumont returned to the Orange Bank to purchase more cashier's checks, this time accompanied by Gerald Bishop and Jerald Peacock. These March 27 transactions all took place at the same teller window used to make the March 26 cashier's check purchases and were again made with currency consisting of small denominations wrapped with rubber bands and in plastic ziplock sandwich bags. Beaumont purchased a cashier's check in the amount of $6,500; Bishop and Peacock both purchased checks in the amount of $9,000.[2] All of these cashier's checks were made payable to the Sabine Title Company.

---

[2] When Bishop attempted to make his purchase, the teller requested identification. Beaumont interrupted, commenting that it was his understanding that reports only needed to be made for transactions of $10,000 or more. *See* Supplemental Record on Appeal, vol. 1, at 60, *United States v. Beaumont*, No. 91-4703 (5th Cir. filed Mar. 11, 1992) ["Supplemental Record on Appeal"].

In April 1990, a federal search warrant was executed on Beaumont's home. Among other physical and documentary evidence, officers found a safe containing approximately $14,300 in currency consisting of small denominations in $1,000 bundles, wrapped with rubbers bands and stored inside plastic ziplock sandwich bags. Beaumont's safe also contained the carbon copy portion of the five cashier's checks purchased by him, Hersman, Bishop, and Peacock.

**B**

Beaumont, Hersman, Bishop, and Peacock were indicted for structuring financial transactions for the purpose of evading the reporting requirements of 31 U.S.C. § 5313(a) in violation of 31 U.S.C. § 5324(3).[3] After his arrest, Hersman made oral inculpatory statements to state and federal officers--that is, recanting a statement he originally gave to a special agent for the Internal Revenue Service (I.R.S.),[4] Hersman told law enforcement agents that Beaumont had given him the cash necessary for the purchase of his cashier's check and that there was no

---

[3]  Beaumont, along with three other defendants, was originally indicted in a multi-count indictment charging conspiracy to manufacture methamphetamine and other drug offenses. The structuring charge at issue before us was added by a superseding indictment and, upon motion by the defense, was eventually severed from the drug charges.

[4]  Following execution of the federal search warrant on Beaumont's home in April 1990, a special agent for the I.R.S., Criminal Investigation Division, conducted separate interviews with Bishop, Hersman, and Peacock. At that time, all three told this agent essentially the same story: They had entered into an investment agreement with Beaumont for the purchase of real property in Newton County, Texas and the currency they used to purchase the cashier's checks was cash they had saved.

agreement to invest in the purchase of real property in Newton County.

At trial, Hersman's post-arrest oral statements were modified to remove references to Beaumont. Moreover, prior to admitting any testimony concerning Hersman's statements, the court held a hearing outside the presence of the jury to determine whether a *Bruton*-type[5] violation was likely. Beaumont moved for a severance, arguing that, because of facts and circumstances already presented to the jury, the modified--all references to Beaumont were removed--Hersman statements had the effect of telling the jury that either Beaumont or his co-defendants gave the money to Hersman. The district court denied Beaumont's request for a severance and declined to exclude the modified Hersman post-arrest statements. Hersman's statements were introduced at trial through the testimony of two prosecution witnesses, Commander Wayne Hoffman and Texas Public Safety Investigator Howard Jake Smith, and all defendants were convicted of the structuring charge. Beaumont was sentenced to a prison term of twenty-four months, to be served concurrently with a life sentence for his conviction on related drug charges.[6]

---

[5] In *Bruton v. United States*, 391 U.S. 123, 127-28, 88 S. Ct. 1620, 1623 (1968), *cert. denied*, 397 U.S. 1014, 90 S. Ct. 1248 (1970), discussed *infra* at Part II.B, the Supreme Court set forth the standard for determining when a Sixth Amendment right to confrontation is violated through the extrajudicial statements of a co-defendant.

[6] *See supra* note 3.

## II

Beaumont raises two issues on appeal:

**A.** Whether the district court erred in its instruction on structuring; and

**B.** Whether the district court erred in refusing Beaumont's motion for severance.

## A

Beaumont contends that the district court erred in the jury instruction it gave on structuring pursuant to 31 U.S.C. §§ 5313(a), 5324(3). We disagree.

The court instructed the jury as follows:

> Title 31, Section 5324(3) of the United States Code states in part that no person shall for the purpose of evading the reporting requirements of Section 5313(a), structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions.
>
> * * *
>
> It is not necessary for the Government to prove that a defendant knew that structuring or assisting in structuring a transaction to avoid triggering the filing requirements was itself illegal. *The Government need only prove beyond a reasonable doubt that a defendant structured or assisted in structuring currency transactions with knowledge of the reporting requirements and with the specific intent to avoid said reporting requirements.* In other words, a defendant's ignorance of the law prohibiting structuring is no defense if he knew about filing requirements and intentionally acted to evade or assisted in evading them.[7]

---

[7] Supplemental Record on Appeal, vol. 4, at 70-72, (emphasis added). Moreover, at the close of evidence, the district court instructed the jury that they should consider the evidence concerning a statement "with caution and great care." *Id*. at 68. The court also charged that "the case of each defendant and the evidence pertaining to that defendant should be considered separately and individually." *Id*. Neither Beaumont nor his co-defendants requested any other instruction regarding this issue.

5

Relying upon *Cheek v. United States*, ___ U.S. ___, ___, 111 S. Ct. 604, 609-610 (1991), Beaumont argues that the government was required to prove that (1) he knew that structuring was against the law and (2) specifically intended to violate the law against structuring.[8]

Beaumont did not object to this structuring instruction at trial, and "we have held in the past that where no timely objection is made to a jury instruction, the claimed error cannot be reviewed on appeal unless giving the instruction was `plain error' so fundamental as to result in a miscarriage of justice." *Branch-Hines v. Hebert*, 939 F.2d 1311, 1319 (5th Cir. 1991) (citations omitted) (where district court erroneously instructed jury, reversing and remanding for new trial on issue of general damages); *see United States v. Thevis*, 665 F.2d 616, 645 (5th Cir.) ("[O]bjections to jury instructions not timely made are waived unless the instruction constitutes `plain error.'"), *cert. denied*, 456 U.S. 1008, 102 S. Ct. 2300 (1982). Plain error, in the context of jury instructions, is found only if "the charge, considered as a whole, is so clearly erroneous as to result in a likelihood of a grave miscarriage of justice . . . or seriously

_____

[8] In *Cheek*, the Court held that a defendant charged with willful failure to file a tax return is entitled to instructions that inform the jury that a good faith belief that one need not file a tax return need not be objectively reasonable to be a valid defense. *Id.* This court and others have held that *Cheek*'s "statutory interpretation of `willfulness' is `an exception to the traditional rule and is a statutory element of special treatment of criminal tax offenses.'" *United States v. Chaney*, No. 91-8206 (5th Cir. June 19, 1992) (slip. op. at 5591 n.25), *quoting United States v. Arditti*, 955 F.2d 331, 340 (5th Cir. 1992) (other citations omitted).

affects the fairness, integrity, or public reputation of judicial proceedings." *Thevis*, 665 F.2d at 645 (citation and internal quotations omitted).

Section 5324 provides, in pertinent part, that "[n]o person shall for the purpose of evading the reporting requirements of section 5313(a) with respect to such transaction . . . (3) structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions." 31 U.S.C. § 5324.[9] This Court has held that "the intent requirements of section 5324(c) are met if the defendant (1) knew of the bank's legal obligation to report transactions in excess of $10,000; and (2) acted with the purpose of defeating that law, rather than with some innocent purpose." *United States v. Peacock*, No. 91-4346 (5th Cir., Feb. 6, 1992) (unpublished slip op. at 6), *citing United States v. Camarena*, No. 88-1314 , 1988 WL 216293, at *3 (5th Cir. Dec. 6, 1988) ("It follows from this account of the legislative history that the government is correct in its contention that the required specific intent is proved by evidence that [the defendant] knew of the bank's legal obligation to report transactions in excess of $10,000 and acted with the bad purpose of defeating that law rather than for some innocent purpose."). We find that this

---

[9] Among its general accountability objectives, the purpose of this provision it to prohibit structuring, also known as "smurfing"--that is, laundering large amounts of ill-gotten currency by engaging in multiple currency transactions, each under $10,000, within a brief period of time. *See United States v. Scanio*, 900 F.2d 485, 491 (2nd Cir. 1990).

7

intent requirement of section 5324(3) is clearly captured within the district court's instruction.

As for Beaumont's contention that Cheek, ___ U.S. at ___, 111 S. Ct. at 609-610, requires that the government prove that he (1) knew structuring was against the law and (2) acted with specific intent to violate that law, other circuits have addressed this issue and have declined to extend *Cheek* to section 5324.  *See United States v. Rogers*, 962 F.2d 342, 344 (4th Cir. 1992) (following the Tenth and Eleventh Circuits).  Specifically, the *Rogers* court reasoned:

> In *Cheek*, the rationale for the Court's exception to the traditional interpretation of "willful" was the complexity of the tax code, which often makes it difficult for the average citizen to know what the law requires.  *Cheek*, 111 S. Ct. at 609-10.  That sort of complexity simply is not present in cases involving the "straightforward currency reporting requirements." *Dashney*, 937 F.2d at 540.  Like the court in *Dashney*, we believe that the circumstances justifying an adoption of the *Cheek* definition of "willfulness" are limited, and this case does not present them.

*Id*. at 344.  We agree with this reasoning and, therefore, we find that the district court did not commit plain error in instructing the jury to find Beaumont guilty if he (1) knew of the reporting laws and (2) willfully attempted to evade them.

**B**

Beaumont also contends that the district court committed reversible error by admitting Hersman's statements without severing Beaumont from the case.[10]  We disagree.

---

[10]  According to Beaumont, Hersman's statements, extracted through the testimony of others, implicated him--especially when combined with testimony that he and Hersman entered the bank

8

In *Bruton v. United States*, 391 U.S. 123, 127, 88 S. Ct. 1620, 1623 (1968), *cert. denied*, 397 U.S. 1014, 90 S. Ct. 1248 (1970), the Supreme Court held that a defendant's Sixth Amendment right to confrontation is violated when (1) several co-defendants are tried jointly, (2) one defendant's extrajudicial statement is used to implicate another defendant in the crime, and (3) the confessor does not take the stand and is thus not subject to cross-examination. Severance of the trials is proper, but only in cases where a defendant's statement directly incriminates his or her co-defendants without reference to other, admissible evidence. *See United States v. Espinoza-Seanez*, 862 F.2d 526, 534 (5th Cir. 1988). "This Court has held consistently that the *Bruton* rule is not violated unless a co-defendant's statement directly alludes to the complaining defendant . . . . This is true, even if the evidence makes it apparent that the defendant was implicated by some indirect references." *Id., quoting United States v. Webster*, 734 F.2d 1048, 1054 n.6 (5th Cir.), *cert.*

---

together and that Hersman took direction from him. Specifically, Beaumont asserts that Hersman's statement that "he [meaning Hersman] thought that Mr. Beaumont was trying to get around the [currency transaction reporting] requirement . . . ." (Supplemental Record on Appeal, vol. 2, at 112), admitted through the testimony of David Zuniga, special agent for criminal division of the I.R.S, implicated him in that it served as evidence of Beaumont's knowledge of the reporting requirements of 31 U.S.C. 31 U.S.C. § 5313. Beaumont also asserts that he was implicated by Hersman's statements (elicited through the testimony of Hoffman and Smith, a Texas public safety investigator) that (1) Hersman had obtained the money for the cashier's check from some one else and was getting the check for that person, and (2) Hersman was doing a favor for a friend by getting the cashier's check. *See* Supplemental Record on Appeal, vol. 2, at 135-48.

9

*denied*, 469 U.S. 1073, 105 S. Ct. 565 (1984).    We review *Bruton* issues under the abuse of discretion standard.  *See United States v. Basey*, 816 F.2d 980, 1004 (5th Cir. 1987).

Hersman's statements elicited through the testimony of Hoffman and Smith--that is, statements that Hersman got the money from "a friend" and that Hersman was just doing a favor for "a friend"--do not directly implicate Beaumont and, therefore, do not violate *Bruton*.  *See Espinoza-Seanez*, 862 F.2d at 534 (where defendants' confessions were used to implicate co-defendants but those confessing did not take the stand, defendants were not denied Sixth Amendment right to confront witnesses because confessions did not directly implicate them without reference to other, admissible evidence).  As for Zuniga's testimony that Hersman told him that he thought Beaumont was trying to get around the reporting requirements of section 5313(a), Beaumont did not object to this testimony at trial.  Our review of such testimony is only for plain error--that is, we look to see whether it "undermine[d] the fairness of the trial and contribute[d] to a miscarriage of justice."  *United States v. Young*, 470 U.S. 1, 15-16, 20, 105 S. Ct. 1038 (1985); *see also Basey*, 816 F.2d at 1005 (the error may be harmless if the statement's impact is insignificant compared with other evidence against the defendant); *United States v. Lewis*, 786 F.2d 1278, 1286 (5th Cir. 1986).  We find that, because Beaumont was

10

overwhelmingly implicated by other evidence,[11] the extraction of Hersman's statements from Zuniga's testimony neither undermined the fairness of Beaumont's trial nor contributed to any miscarriage of justice.  We conclude, therefore, that the district court did not commit reversible error by refusing to sever Beaumont from the case.

### III

For the foregoing reasons, we AFFIRM.

---

[11]     For example Becky Jo Nations, a teller at the Orange Bank, testified that:

(1) Hersman and Beaumont came into Orange Bank together on March 26, 1990;
(2) both purchased cashier's checks made out to "Sabine Title Company";
(3) when Hersman discovered that he was about $500 short for his purchase and mentioned this, Beaumont made up the difference;
(4) Beaumont came back the next day with Peacock and Bishop to purchase more cashier's checks made out to Sabine Title Company; and
(5) all of these cashier's checks were purchased with cash in folded-over bundles of $1000, which were secured by rubber bands and stored in ziplock bags.

Supplemental Record on Appeal, vol. 1, at 104-119.  Jossie Wilkinson, vice president of the Orange Bank, and Evelyn Whitehead, a teller at Orange bank, offered similar testimony about the defendants' cashier's checks. *Id*. at 24-102; Supplemental Record on Appeal, vol. 3, at 29-45; *see, e.g., supra* note 2 (testimony suggesting the Beaumont was well-aware of the reporting requirement for transactions in excess of $10,000 and that he did not want Bishop's transaction to be reported). Moreover, the carbon portion of the Beaumont, Hersman, Peacock, and Bishop cashier's checks were all found in a safe at Beaumont's residence.

11