icate of Deposit No. 980354416799, Pittsburgh National Bank Certificate of Deposit No. 980354416800, Pittsburgh National Bank Certificate of Deposit No. 980354435829, Union National Bank Money Fund Account No. 124231267.

**Appeal of Claimant James E. STEY.**

No. 92–3173.

United States Court of Appeals, Third Circuit.

Argued Oct. 5, 1992.

Nov. 25, 1992.

**UNITED STATES of America**

v.

**DOLLAR BANK MONEY MARKET ACCOUNT NO. 1591768456, Dollar Bank Certificate of Deposit No. 60591768484, Dollar Bank Certificate of Deposit No. 60591772685, Dollar Bank Certificate of Deposit No. 60591778152, Equibank Certificate of Deposit No. 10410032199331, Equibank Money Market Account No. 5783112, Equibank Certificate of Deposit No. 10410032199341, Equibank Certificate of Deposit No. 10410032199360, Equibank Certificate of Deposit No. 10410032199569, First Seneca Bank Money Market Account No. 80273569, First Seneca Bank Certificate of Deposit No. 20054, First Seneca Bank Certificate of Deposit No. 200545, First Seneca Bank Certificate of Deposit No. 200546, Great American Federal Savings Account No. 300903659, Great American Federal Certificate of Deposit No. 10027818, Mellon Bank Money Market Account No. 3699793, Mellon Bank Certificate of Deposit No. 28368, Mellon Bank Certificate of Deposit No. 28430, Mellon Bank Certificate of Deposit No. 28500, Pittsburgh National Bank Certif-**

H. Yale Gutnick, Frank Arcuri, Ronald D. Barber (Argued), Strassberger McKenna Gutnick & Potter, Pittsburgh, Pa., for appellant.

Thomas W. Corbett, U.S. Atty., Paul J. Brysh, Asst. U.S. Atty., Michael L. Ivory (Argued), Asst. U.S. Atty., Pittsburgh, Pa., for appellee.

BEFORE: GREENBERG, COWEN and WEIS, Circuit Judges.

## OPINION OF THE COURT

COWEN, Circuit Judge.

Claimant James E. Stey appeals the grant of summary judgment ordering civil forfeiture of $66,600 in bank deposits under 18 U.S.C. § 981(a)(1)(A) (1988). The district court held that the funds were subject to forfeiture because they were deposited by Stey in violation of 31 U.S.C. § 5324(3) (1988), which prohibits structuring transactions "for the purpose of evading the reporting requirements of section 5313(a)." Under 31 U.S.C. § 5313(a) (1988), banks are required to file a currency transaction report ("CTR") for every transaction over $10,000.

In this appeal, we will examine the *mens rea* requirement of 31 U.S.C. § 5324. According to Stey, evidence on record shows that he believed that the filing of CTRs is required by a bank policy, instead of by law. He argues that a triable issue of material fact exists as to whether he had the *mens rea* required by section 5324. We agree with Stey that a person cannot violate section 5324 unless he knows that the filing of CTRs is required by law. Because we also find that a genuine issue of material fact exists regarding Stey's mental state, we will reverse the grant of summary judgment and remand the case for trial.

## I.

On appeal of a grant of summary judgment, we must view all facts and inferences in the light most favorable to the non-moving party, in this case the claimant Stey. *Clement v. Consolidated Rail Corp.*, 963 F.2d 599, 600 (3d Cir.1992). The funds which the government claims are forfeited originally belonged to Stey's aunt, Rose Miller. During her lifetime, Miller saved about $230,000 in cash derived entirely from legitimate sources. She had little faith in financial institutions, so she kept the money hidden in her house in Homestead, Pennsylvania. The house was located in a deteriorating neighborhood.

In July of 1989, at age 82, Miller moved into a nursing home because of declining health. Consistent with earlier promises, she gave the money hidden in her house to her three nephews, James E. Stey (the appellant), John A. Stey, and George C. Stey, in equal shares on March 29, 1989. Miller executed a gift instrument prepared by her attorney, Michael Murphy.

Shortly thereafter, James Stey removed the money from Miller's house and deposited it in safety deposit boxes at a bank in Homestead. James and John Stey intended to use the funds to pay Miller's expenses in her declining years. About $30,000 was spent to care for Miller. In March of 1989, James Stey contacted attorney Murphy for legal advice on how to deposit the money in banks. Murphy told him that it was legal to possess large amounts of cash and that Stey could make one large deposit or several smaller ones. Murphy also told Stey that if he deposited more than $10,000 at a time, he would have to fill out a report at the bank, and that he could lawfully avoid filling out reports by depositing less than $10,000 at a time. Stey allegedly verified the accuracy of this advice by consulting an accountant and a bank branch manager. According to Stey, neither Murphy nor the other professionals informed Stey that banks are required by law to file reports of transactions exceeding $10,000.

From March 31 to April 16, 1989, Stey made twenty-six deposits totalling $199,800 in seven different banks in the Homestead area. Twenty of the deposits ranged from $8,000 to $9,500; two were for $6,000; two were for $3,000; and two were for $1,000. No CTRs were filed. While making the deposits, Stey allegedly asked two other bank branch managers whether it was lawful to avoid reporting transactions by depositing amounts under $10,000. They said that it was lawful and did not inform him that reporting was required by law.

On June 26, 1989, the United States filed a complaint in the United States District Court for the Western District of Pennsylvania (Civ. No. 89–1384) against the bank accounts containing the funds. The government alleged that the funds were subject to civil forfeiture under 18 U.S.C. § 981(a)(1)(A) because they were deposited in violation of 18 U.S.C. §§ 5324 and 5313(a), which prohibit structuring transactions to evade federal reporting requirements. The government also filed a petition for issuance of a warrant of arrest *in rem* on probable cause shown, which the district court granted.

James Stey, John Stey, George Stey, and Rose Miller filed a joint claim to the funds. During discovery, in his answers to interrogatories, James Stey denied that he structured the transactions to evade the reporting requirements and instead gave the following explanations for his actions: avoid publicity to protect his family's and his own privacy; respect Miller's wishes by maintaining the same high level of privacy

that she always maintained regarding the funds; and protect Miller's house and any additional money and property located therein. Stey claimed that he was unaware that the filing of CTRs was required by law, and that because of the professional advice he received, he always thought the transactions were legal.

Following discovery, claimants John and George Stey filed a motion for summary judgment with respect to their two-thirds of the funds. The government filed a response in opposition and cross-moved for summary judgment against claimants James, John, and George Stey. The fourth claimant, Rose Miller, had died.

On February 18, 1992, the district court granted John and George Stey's motion for summary judgment on the grounds that they established the "innocent owner" defense under 18 U.S.C. § 981(a)(2) with respect to their two-thirds of the funds. The district court granted the government's motion for summary judgment against James Stey, concluding that his one-third of the funds was subject to forfeiture. James Stey now appeals this order.

■ The district court had jurisdiction under 28 U.S.C. § 1355 (1988), and we have jurisdiction over the appeal under 28 U.S.C. § 1291 (1988). We exercise plenary review over an order granting summary judgment. *Clement*, 963 F.2d at 600. We apply the same test as the district court under Federal Rule of Civil Procedure 56(c): whether there remains a genuine issue of material fact, and if not, whether the movant is entitled to judgment as a matter of law. *Id.*

## II.

Federal law requires that financial institutions file a currency transaction report with the Treasury Department for every transaction involving over $10,000. 31 U.S.C. § 5313(a) (1988); 31 C.F.R. § 103.-22(a)(1) (1991). The government claims that appellant structured his bank deposits to evade these reporting requirements in violation of 31 U.S.C. § 5324(3), which provides:

No person shall for the purpose of evading the reporting requirements of section 5313(a) with respect to such transaction—

. . . .

(3) structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions.

Claimant Stey appeals on the grounds that a triable issue of material fact exists as to whether he had the *mens rea* required by this statute. He argues that he could not have structured transactions "for the purpose of evading the reporting the requirements of [31 U.S.C.] section 5313(a)" because he was ignorant of those requirements. He allegedly thought that reporting of transactions was required only by a private bank policy, not by law. The government argues that it was entitled to judgment as a matter of law because appellant's structuring of deposits clearly indicates that he knew that some kind of report would have to be filed, and section 5324 does not require more specific knowledge.

If the government's position is correct, then one-third of the funds deposited by Stey are subject to civil forfeiture under 18 U.S.C. § 981(a)(1)(A), which provides:

■ [T]he following property is subject to forfeiture to the United States:

(A) Any property, real or personal, involved in a transaction or attempted transaction in violation of section 5313(a) or 5324 of title 31. . . .

This statute authorizes the government to bring an *in rem* action against the property involved in an unlawful transaction. The government initially must establish probable cause to believe that the property was involved in a transaction violating 31 U.S.C. §§ 5313(a) or 5324. *See* 19 U.S.C. § 1615 (1988) (incorporated into 18 U.S.C. § 981(d) (Supp. II 1990)); *United States v. Wollman*, 945 F.2d 79, 81 (4th Cir.1991). The government's showing of probable cause must encompass both the prohibited conduct and the mental state required by the statute. *United States v. 316 Units of Municipal Securities in the Name of Efrain Gonzalez*, 725 F.Supp. 172, 177

(S.D.N.Y.1989). The burden then shifts to the claimant to prove by a preponderance of the evidence that the funds are not subject to forfeiture. *See* 19 U.S.C. § 1615 (1988); *Wollman,* 945 F.2d at 81. Summary judgment is inappropriate where the claimant establishes that a genuine issue of material fact exits as to one of the required elements, such as the mental state. *316 Units,* 725 F.Supp. at 179.

■ The government established that Stey made twenty-six deposits at seven different banks within a nineteen day period. Most of the deposits were just under $10,-000. On this record, we conclude that the government has shown probable cause to believe that Stey knew about the federal reporting requirements and structured his deposits to evade them, in violation of 31 U.S.C. § 5324.[1] Stey admits that he organized his deposits in amounts under $10,-000, but he claims that he did not act for the purpose of evading the federal reporting requirements because he did not know that reporting by banks was required by law. If Stey has established that a genuine issue of material fact exists as to whether he had the mental state required by section 5324, then summary judgment was inappropriate.

■ By its literal terms, section 5324 requires a specific and precisely defined *mens rea:* a person must structure "for the purpose of evading the reporting requirements of section 5313(a)." 31 U.S.C. § 5324. The statute does not prohibit evasion of *any* reporting requirement, such as a bank policy, but only the requirements imposed by law under 31 U.S.C. § 5313(a). A person cannot act for the purpose of evading the legal reporting requirements if he does not know that they exist.

The government argues that appellant's numerous deposits just under $10,000 establish, as a matter of law, that he was

aware of the reporting requirements and tried to evade them. At oral argument, the government further argued that structuring is a "general intent crime," which refers to a crime that requires the intent only to commit the conduct that is the *actus reus* of the crime. A "specific intent crime," on the other hand, is one whose definition requires a special *mens rea* above and beyond that which is required for the *actus reus* of the crime. *See* 1 W. LaFave & A. Scott, *Substantive Criminal Law* § 3.5, at 314–15 (1986); R. Perkins & R. Boyce, *Criminal Law* 851–54 (3d ed. 1982); *see also United States v. Bailey,* 444 U.S. 394, 405, 100 S.Ct. 624, 632, 62 L.Ed.2d 575 (1980) ("purpose" corresponds loosely with common law concept of specific intent). Contrary to the government's position, both the text and legislative history of section 5324 suggest that structuring is a specific intent crime.

Section 5324 specifies the *mens rea* ("for the purpose evading the reporting requirements") while subsection 5324(3) specifies the *actus reus* (structuring of transactions). The *mens rea* and *actus reus* appear in the text of the statute as two separate, distinct elements, both of which must be proven. Proof that the accused structured transactions in amounts under $10,000 is not enough. It must also be proven that he structured for the specific purpose of evading the federal reporting requirements. If a person were ignorant of the requirements and deposited a large amount of cash in $9,000 installments, he would not violate section 5324. A jury might infer from such conduct that he knew of the law's requirements and tried to evade them, but proof of the conduct does not automatically prove, as a matter of law, the intent to avoid reporting.

The legislative history supports our position. In the Senate Report, the Committee

---

1. Though the parties' briefs and oral arguments focused on section 5324, the government also has claimed that the funds are forfeited because they were deposited in violation of section 5313(a). The elements of a violation of section 5313(a) are contained in 31 C.F.R. § 103.53 (1991), which contains the exact same provisions as section 5324 and the exact same *mens*

*rea* requirement. Regulation section 103.53(c) prohibits structuring "for the purpose of evading the reporting requirements of [31 C.F.R.] § 103.22." Therefore, our discussion of the *mens rea* for a violation of section 5324 will apply equally to a violation of section 5313(a) and the regulations promulgated thereunder.

on the Judiciary described an example of culpable conduct under the statute:

> [A] person who converts $18,000 in currency to cashier's checks by purchasing two $9,000 cashier's checks at two different banks or on two different days with the *specific intent that the participating bank or banks not be required to file Currency Transaction Reports* for those transactions, would be subject to potential *civil and criminal* liability. A person conducting the same transactions for any other reasons ... would not be subject to liability under the proposed amendment.

S.Rep. No. 99–433, 99th Cong., 2d Sess. 22 (1986) (emphasis added). Congress intended to penalize persons who structure transactions with the "specific intent" to avoid the CTR reporting requirements. A person cannot have the specific intent to violate those requirements unless he knows that they exist and are imposed by law.

Elsewhere in the same Senate Report, while describing the new civil forfeiture provisions of 18 U.S.C. § 981(a), the committee stated: "Property involved in a transaction which the owner *knows to be in violation of CTR reporting requirements* are (sic) similarly subject to forfeiture by the Secretary of the Treasury." *Id.* at 23 (emphasis added). Congress only intended to authorize the civil forfeiture of funds where the owner knew that CTRs must be filed. Requiring that violators of section 5324 know of the legal obligation to file reports ensures that persons who innocently deposit amounts under $10,000 are not held liable. *See United States v. Ratzlaf,* 976 F.2d 1280, 1286 (9th Cir.1992); *cf.* S. Welling, *Smurfs, Money Laundering, and the Federal Criminal Law: The Crime of Structuring Transactions,* 41 Fla.L.Rev. 287, 310–20 (1989) (because defendant cannot be convicted without knowledge of bank reporting law and purpose to evade it, ignorance of anti-structuring statute should not be a defense).

We conclude that Congress intended to impose liability under section 5324 only on persons who know that the law requires banks to file CTRs and who act to evade that requirement. The statute requires the "purpose" to evade the federal reporting requirements, and we cannot infer a bad purpose or any dishonesty from an attempt to evade a bank policy. The claimant cannot avoid forfeiture solely because the owner (often himself) did not know that structuring is illegal, but he can avoid forfeiture if he proves [2] that the owner did not know that reporting is required by law.

The government argues that a judgment in favor of appellant would conflict with the decisions of other courts of appeals. It cites several cases which held that section 5324(3) does not require knowledge of the illegality of structuring. *See, e.g., United States v. Brown,* 954 F.2d 1563, 1568 (11th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 284, 121 L.Ed.2d 210 (1992); *United States v. Dashney,* 937 F.2d 532, 537–40 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 402, 116 L.Ed.2d 351 (1991); *Wollman,* 945 F.2d at 81. We agree with the holding of those cases, but today are presented with a different issue: whether section 5324(3) requires an awareness that reporting is required by law. In every case disclosed by our research in which the *mens rea* requirement of section 5324 was found to be satisfied, the defendant or claimant knew that the filing of CTRs was required by law, *see United States v. Rogers,* 962 F.2d 342, 343 (4th Cir.1992) (defendant admitted that he tried to avoid requirement that bank file report to IRS); *Brown,* 954 F.2d at 1566 (defendant told IRS that she tried to avoid reporting requirements); *United States v. Nall,* 949 F.2d 301, 304 (10th Cir.1991) (defendant did not want "IRS forms" filled out); *Dashney,* 937 F.2d at 533–34 (defendant told teller he did not want CTR filled out so that he could avoid paying taxes); *Wollman,* 945 F.2d at 82 (teller told defendant that reporting to the IRS is "necessary paperwork"); *United States v. Scanio,* 900

---

**2.** In a civil forfeiture case, the claimant has the burden of proof regarding *mens rea.* In a civil penalty or criminal case under 31 U.S.C. §§ 5321–5322 (1988), the government has the burden.

F.2d 485, 486 (2d Cir.1990) (teller told defendant that "government form" had to be filled out); *cf. United States v. Besmajian,* 910 F.2d 1153, 1159 (3d Cir.1990) (prior to enactment of section 5324, in prosecution for aiding and abetting violation of section 5313, fact that defendants were brokers created strong presumption that they knew of all reporting requirements imposed by law); *United States v. American Investors of Pittsburgh, Inc.,* 879 F.2d 1087, 1097 & n. 14 (3d Cir.) (same), *cert. denied,* 493 U.S. 955, 110 S.Ct. 368, 107 L.Ed.2d 354 (1989); or the courts did not say whether the defendant specifically knew that reporting was required by law because it was unnecessary to address that question to determine whether ignorance of illegality is a defense, *see Ratzlaf,* 976 F.2d at 1286; *United States v. Beaumont,* 972 F.2d 91, 94–95 (5th Cir.1992); *United States v. Gibbons,* 968 F.2d 639, 644 (8th Cir.1992); *United States v. Hoyland,* 914 F.2d 1125, 1129–30 (9th Cir.1990). Our holding is consistent with the law of the other circuits.

It is firmly established that a person cannot violate section 5324 unless he "had knowledge of the reporting requirements and acted to avoid them." *Wollman,* 945 F.2d at 81 (quoting *316 Units,* 725 F.Supp. at 179); *accord Ratzlaf,* 976 F.2d at 1286; *Rogers,* 962 F.2d at 344; *Brown,* 954 F.2d at 1569. In *Scanio,* for example, the district judge charged the jury that a conviction under section 5324(3) does not require knowledge that structuring is illegal. 900 F.2d at 489. The Court of Appeals for the Second Circuit upheld the charge and the conviction, stating:

[Scanio] was charged with having intentionally structured a currency transaction with the explicit purpose of evading what he *knew to be the bank's legal duty to file CTRs* for all transactions exceeding $10,000. Scanio engaged in affirmative conduct and *demonstrated an awareness of the legal framework relative to currency transactions* which, it is reasonable to conclude, should have alerted him to the consequences of his conduct.

*Id.* at 490 (emphasis added). Though the court rejected the ignorance of illegality defense, it presumed that section 5324 requires an awareness of the bank's legal obligation to file CTRs. The court articulated the *mens rea* requirement as follows:

[T]he requirement that a defendant be shown to have acted with a "bad purpose" is satisfied by proof that (s)he (1) *knew that the bank was legally obligated to report currency transactions exceeding $10,000* and (2) *intended to deprive the government of information to which it is entitled.*

*Id.* at 491 (emphasis added); *accord Beaumont,* 972 F.2d at 94; *Gibbons,* 968 F.2d at 644; *Brown,* 954 F.2d at 1568; *Ratzlaf,* 976 F.2d at 1283. As *Scanio* suggests, a person lacks the *mens rea* required by section 5324 unless he knows that the law requires banks to report transactions over $10,000. A person who believes that reporting is required by a bank policy, instead of the law, cannot structure for the purpose of evading the requirements of 31 U.S.C. § 5313(a).[3]

---

**3.** In his dissent, Judge Greenberg argues that our holding cannot be reconciled with the opinions of other courts of appeals. We disagree. The cases cited by him held that section 5324 does not require the defendant to know that structuring is illegal, *Rogers,* 962 F.2d at 344; *Brown,* 954 F.2d at 1568; *Dashney,* 937 F.2d at 537–40; *Hoyland,* 914 F.2d at 1129–30, but today we must decide the different issue of whether the statute requires knowledge that reporting is required by law. In holding that section 5324 does not require knowledge of illegality, the other courts of appeals presumed that the defendant already knew of the legal obligation to file CTRs. *See, e.g., Rogers,* 962 F.2d at 344 ("[T]he only scienter required for a violation of § 5324(3) is that the violating party 'had knowl-

edge of the reporting requirements and acted to avoid them.' "); *Brown,* 954 F.2d at 1568 ("The government need only prove that the defendant was aware of the bank reporting requirement for currency transactions in excess of $10,000 and sought to evade those requirements through money structuring.") (quoting *Wollman,* 945 F.2d at 81). The cases quoted in the dissent support, rather than contradict, our position.

Judge Greenberg also states that no case has held that forfeiture can be avoided because the claimant thought that a bank policy, rather than the law, is the source of the reporting requirements. No other court of appeals has considered that particular issue, but several of them have held that section 5324 requires that the defendant "knew that the bank was legally obli-

We are aware that *Scanio* and most of the other cases interpreted the *mens rea* requirement of section 5324 in the context of a criminal conviction, which requires the additional element of willfulness. 31 U.S.C. § 5322(a) (1988); *see also id.* § 5321(a)(4)(A) (requiring willfulness for imposition of civil money penalty). We are skeptical that there is any difference between structuring transactions purposefully in violation of section 5324(3), or structuring them willfully and purposefully in violation of sections 5324(3) and 5322(a). "Purpose," being synonymous with "intent," is the highest degree of culpability found in penal statutes. Nonetheless, we hold only that a person cannot structure transactions in violation of section 5324 unless he knows that the reporting of transactions over $10,000 is required by law.

Knowledge of the requirements is necessary because the statute prohibits purposeful conduct aimed at defeating the government's right to information. *See Scanio*, 900 F.2d at 491. A party who thinks that reporting is required only by a bank policy does not have knowledge of the reporting requirements referred to in 31 U.S.C. §§ 5324 and 5313(a) and the case law. Nor can he act for the unlawful purpose of depriving the government of information, if he is unaware of the government's legal entitlement to it. The *mens rea* of section 5324 is only satisfied if the accused knows that reporting is required by law.[4]

Though the statute requires an awareness of the legal obligation to file reports, a violator need not know about section 5324 itself or the specific provisions of any statute or regulation. If that were the standard, only lawyers and accountants would be liable for structuring. Requiring more specific knowledge for a violation of section 5324 would frustrate Congress' intent

to gather information about large cash transactions.

 We must now address whether the grant of summary judgment was appropriate, where appellant claims that he thought that reporting was a bank policy and not a legal obligation. The only case to address this issue is *316 Units*, 725 F.Supp. at 177–80, upon which Stey heavily relies. In that civil forfeiture case, the claimants were two Spanish-speaking Mexican citizens who made forty-six deposits under $10,000 at eleven different banks on ten different days. They claimed that they were ignorant of American laws, that nobody explained the CTR requirement to them, and that their motive was to prevent the Mexican government from discovering their assets in the United States. They allegedly believed that CTRs were required by a bank policy, rather than federal law. The district court denied the government's motion for summary judgment, stating that "summary judgment is inappropriate where claimants offer a legitimate, albeit unlikely, explanation for not wanting their transactions reported." *Id.* at 180. Though we agree that knowledge of an alleged bank policy does not satisfy the *mens rea* requirement of section 5324, we do not agree that a claimant can avoid summary judgment merely by offering any unlikely but legitimate excuse for structuring. That rule would make it virtually impossible for the government to obtain summary judgment.

When the mental state of the nonmoving party is an essential element of a claim, resolution of that claim by summary judgment is often inappropriate because a party's mental state is inherently a question of fact which turns on credibility. *Young v. Quinlan*, 960 F.2d 351, 360 n. 21 (3d Cir. 1992); *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir.1981). A person's mental state is an essential element of a claim of unlawful

---

gated to report currency transactions exceeding $10,000." *Scanio*, 900 F.2d at 491; *Beaumont*, 972 F.2d at 94; *Gibbons*, 968 F.2d at 644; *Brown*, 954 F.2d at 1568. It logically follows that awareness of a mere private bank policy does not satisfy the *mens rea* requirement of section 5324.

**4.** One way that a person can satisfy the *mens rea* requirement is if a bank employee informed him that a report must be filed with the government if he deposits over $10,000.

structuring. In a civil forfeiture action based on a violation of section 5324, the government cannot prevail on summary judgment if the claimant offers a reasonable and legitimate explanation for the organizing of transactions in amounts under $10,000, and the explanation is verified by facts and circumstances which, if believed, would enable a rational jury to conclude by a preponderance of the evidence that the transactions were not structured for the purpose of evading the reporting requirements. In this case, we must reverse the grant of summary judgment if the record contains sufficient evidence to allow a rational jury to conclude that appellant did not know that the filing of CTRs was required by law, instead of a bank policy. Because Stey is the nonmovant, we will believe his evidence and draw all justifiable inferences in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

Stey offered legitimate explanations for organizing his deposits in amounts under $10,000. He wanted to respect the privacy of his aunt Rose Miller, the original owner of the money. In light of the fact that Miller hid $230,000 in her house over a period of many years because of her distrust of banks, a rational jury might believe this explanation. Stey wanted to safeguard his aunt's vacant house and any money and property located therein. A jury could rationally believe that if news were publicized that an eccentric old woman hid hundreds of thousands of dollars in her house, some people would attempt to burglarize it. This risk is especially acute where a house, like Miller's, is located in a deteriorating neighborhood. Stey also wanted to protect his own and his family's privacy. His need for privacy is credible in light of the peculiar facts of this case, where a lack of privacy could conceivably endanger his aunt's property. Stey's explanations are rendered more credible by the undisputed fact that the funds deposited by him all came from legitimate sources.

Stey also consulted an attorney, an accountant, and three bank branch managers regarding the legality of his deposits, none of whom informed him that the filing of CTRs was required by law, rather than a bank policy. Instead, appellant was advised that it was legal to deposit amounts under $10,000 to avoid the filing of reports. Stey's recollection of events is supported by the affidavit of attorney Michael Murphy, which states:

> I received a call from James Stey. He said he had a lot of cash he wanted to put into the bank and asked if there was any problem with having a lot of cash. I told him that there was nothing wrong with having cash, that he could make one large deposit or several smaller ones, whichever he wanted. I told him that if he made a cash deposit of more than Ten Thousand Dollars he would have to fill out a report at the bank; if it was less than that amount it was not necessary. I recounted to him an occasion when a fellow brought over twenty thousand dollars in cash to a closing and I accompanied him to a savings and loan and watched him fill out the form. During the course of our conversation I suggested that he and his two brothers could each open accounts and if there were less than Thirty thousand dollars, he could make equal deposits in each account and not have to report them.

App. at 148–49. Attorney Murphy apparently thought that it was legal to avoid filing a CTR, and he advised his client accordingly. Judging from Murphy's affidavit, he never told Stey that CTRs were required by law. The record contains no statement from the accountant or bank managers also allegedly consulted by Stey indicating that they informed him of the legal obligation to file CTRs. The government points to the deposition testimony of appellant's brother John Stey, who, when asked about James Stey's motivation for depositing amounts under $10,000, testified that attorney Murphy advised that "you didn't have to fill out any paper work or anything if you put in cash deposits of under Ten Thousand Dollars." Government's Brief at 12. This testimony is consistent with Murphy's affidavit and does not show that Stey knew that reporting

was required by law instead of a bank policy.

The evidence supporting the government is that Stey made twenty-six deposits, most of which were just under $10,000, at seven different banks within nineteen days. From this record, a jury could infer that Stey knew that the law requires banks to report transactions over $10,000, especially after he spoke to five professional people who presumably knew about the reporting requirements. Stey's culpability, however, should be determined at trial and not by summary judgment. After reviewing the factual record in the light most favorable to appellant Stey, we believe that a rational jury could conclude that he did not know that the filing of CTRs was required by law and therefore could not have structured his transactions for the purpose of evading the federal reporting requirements. A genuine issue of material fact exists regarding his mental state.

### III.

We will reverse the order of the district court granting summary judgment and remand the case for trial.

GREENBERG, Circuit Judge, dissenting.

This is an unfortunate situation. We are dealing with legitimate money earned by hard working people rather than criminals stashing profits from an illegal enterprise.

But I nevertheless dissent for, notwithstanding the obvious humanity of Judge Cowen's statement of the law as applied to the facts of this case, the majority's opinion cannot be reconciled with the precedents we should follow and is not consistent with congressional intent as reflected in the wording of 31 U.S.C. § 5324. Furthermore, I am afraid that the holding that a person cannot violate section 5324 without knowing that under 31 U.S.C. § 5313(a) banks are required to file a currency transaction report (CTR) for every transaction over $10,000 will be celebrated by drug dealers from Medellin to Morristown, Cali to Camden, Panama City to Pittsburgh, and Palermo to Philadelphia. I only mention domestic locations within this circuit for

the result reached here cannot be reconciled with the opinions of the other courts of appeal throughout the country and thus I do not expect the opinion in this case to be followed in other circuits. But, we now can anticipate that in this circuit drug dealers and other criminals, the principal targets of the reporting and structuring provisions, will create phony triable issues of fact in reliance on the majority's opinion in attempts to frustrate the enforcement of the forfeiture laws.

There is, of course, no doubt that the appellant knew the requirements of the law, though I concede that to say he had that knowledge is not the same thing as saying that he knew that it was the law which imposed them. The appellant asked his attorney for advice about how to invest the cash he had received. The affidavit of the attorney which appellant submitted in the district court explains how the attorney advised him that he could structure to avoid reporting:

> He [appellant] said he had a lot of cash he wanted to put into the bank and asked if there was any problem with having a lot of cash. I told him that there was nothing wrong with having cash, that he could make one large deposit or several smaller ones, whichever he wanted. I told him that if he made a cash deposit of more than Ten Thousand Dollars he would have to fill out a report at the bank; if it was less than that amount it was not necessary.

App. at 148–49.

The appellant then made 26 cash deposits totaling almost $200,000, but each for less than $10,000, in seven different financial institutions in a short period. This was a classic undertaking in structuring.

Does this make appellant's share of the money subject to forfeiture? Of course it does for section 5324 provides that "[n]o person shall" structure a transaction "for the purpose of evading the reporting requirements of section 5313(a) with respect to such transaction." Here, there is no question but that section 5313(a) required reporting of the deposit of the money and that the appellant structured the transac-

tion with the intent to avoid that requirement. Those circumstances in themselves require a forfeiture for section 5324 does not say that a depositor had to know the source of the requirements. The section simply says that the depositor had to have the purpose of evading the reporting requirements. If Congress had conditioned the forfeiture on a showing that the depositor knew that the reporting requirements were derived from law it would have said so.

My conclusion that the depositor's belief as to the source of the reporting requirements is not germane is supported by the precise holding in *United States v. Brown*, 954 F.2d 1563 (11th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 284, 121 L.Ed.2d 210 (1992). The majority seeks to distinguish *Brown* on a theory that in that criminal case the appellants knew that the filing of a CTR was required by law. That explanation, however, does not work. In *Brown* the appellants contended "that the district court erred in charging the jury that knowledge of the unlawful nature of the act is not an essential element of the crime under 31 U.S.C. § 5324(3), the statute prohibiting structuring of currency transactions." 954 F.2d at 1567. Thus, the court said the issue was "[w]hether the trial court erred in charging the jury that knowledge of the unlawful nature of the act is not an essential element of the crime under 31 U.S.C. § 5324(3), the anti-structuring statute." 954 F.2d at 1567.

The court then indicated that:

The specific question presented by this appeal is whether the jury must find that the defendant knew that money structuring was illegal for the jury to find that the defendant 'willfully' violated the prohibition on money structuring contained in 31 U.S.C. § 5324(3). We hold that the prosecution need not prove the defendant was aware of the illegality of money structuring in order to convict the defendant of that offense under 31 U.S.C. § 5324(3). The government need only prove that the defendant was aware of the bank reporting requirement for currency transactions in excess of $10,000

and sought to evade those requirements through money structuring.

954 F.2d at 1568.

With all due respect to the majority, the holding in *Brown* demonstrates that we should uphold a forfeiture in this case, even viewing the facts as appellant asserts them to be. While, on this appeal from an order for summary judgment, we must assume that the appellant did not know the source "of the bank reporting requirement for currency transactions in excess of $10,-000," that does not matter because he knew that there were such requirements which he "sought to evade." While I accept the majority's position that "[a] person cannot act for the purpose of evading the legal reporting requirements if he does not know that they exist," typescript at 9, that statement misses the point because the appellant knew of the requirements, though he may not have known they were derived from law.

*Brown* is not aberrational. In fact, its holding is followed everywhere. Thus, in *United States v. Hoyland*, 914 F.2d 1125 (9th Cir.1990), another criminal case, the parties stipulated that a defendant, Hoyland, who had been lawfully structuring money transactions before the anti-structuring law was passed, "continued his transactions as before." They further agreed that "[n]o one told him it was now illegal, and Mr. Hoyland never learned of the passage of the new law." Moreover, "[t]he Government agree[d] that [Hoyland] had no notice and/or knowledge of the new law." 914 F.2d at 1127. Notwithstanding Hoyland's position, which was at least as innocent as the appellant's here with respect to the structuring itself, the court of appeals affirmed his conviction for structuring. The court held that the fact that Hoyland did not intend to break the law "as he did not know of this law," *id.* at 1128, did not matter because Congress "changed the law to make it a crime so to structure with the intent to prevent reporting." *Id.* at 1129. Accordingly, the court held that "[t]o act willfully under the statute is to act with this intent." *Id.*

Very recently the court in *United States v. Rogers*, 962 F.2d 342 (4th Cir.1992), in upholding a structuring conviction, rendered an opinion consistent with *Brown* and *Hoyland*. In *Rogers* the court explained the issue raised and its disposition as follows:

Rogers contends that in order to willfully violate § 5324(3), a defendant must have knowledge that structuring transactions to evade the reporting requirement is illegal. He therefore argues that the district court erred in instructing the jury that proof of such knowledge was not required to convict. This circuit has previously held in a case involving civil forfeiture that 'the only scienter required for a violation of § 5324(3) is that the violating party "had knowledge of the reporting requirements and acted to avoid them." ' We have not previously addressed the question of whether proof of a *willful* violation of § 5324(3), as set forth in § 5322(a), requires the additional showing that a party knew that the structuring of the transactions was illegal. We now hold that it does not.

Interpreting the term 'willful' to require proof that the defendant knew that his conduct ran afoul of the law would put us at odds with some basic assumptions. 'Where the law imposes criminal liability for certain conduct, a requirement that the conduct be "willful" generally "means no more than that the person charged with the duty knows what he is doing. It does not mean that, in addition, he must suppose that he is breaking the law." ' This interpretation of 'willful' runs parallel to the rule that 'ignorance of the law is no excuse.' That rule is 'deeply rooted in the American legal system,' and exceptions to it must not be casually created.

962 F.2d at 344 (citations omitted).

While there are other cases consistent with *Brown, Hoyland,* and *Rogers,* I would serve no useful purpose by quoting them at length. *See, e.g., United States v. Dashney*, 937 F.2d 532, 537 (10th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 402, 116 L.Ed.2d 351 (1991) (court rejects contention that for a structuring conviction "it must be established that the defendant had knowledge of the prohibition of structuring transactions in the criminal statutes"). I think that it is sufficient to point out that inasmuch as the appellant unquestionably knew that there was a reporting requirement and intentionally broke the deposits into segments of less than $10,000 to evade the requirement, the summary judgment was properly entered. I recognize that in some forfeiture cases the claimant was aware, as the majority points out, that the reporting was required by law. But I am aware of no court of appeals which, until today, has held that a forfeiture can be avoided by a claimant who has structured his transaction, simply because the claimant thought that the source of the reporting requirement sought to be evaded was derived from bank policy rather than law. At least the majority cites no such case.

I also recognize that the majority cites legislative history in support of its position. But the examples in that history merely demonstrate other situations in which there can be a forfeiture. The majority cites no example in the history which suggests that in the circumstances of this case there cannot be a forfeiture. As the *Rogers* court indicated: "The legislative history is not particularly helpful, but what there is affords no basis to conclude that knowledge of illegality is an element of the offense." 962 F.2d at 344.

I realize that it reasonably could be concluded from the appellant's attorney's affidavit that he told the appellant that what he was doing was lawful. Accordingly, some people, including me, would think the district court reached a harsh result. But in a sense the affidavit backfires because it supplies direct proof from the appellant that he knew that there was a structuring requirement which he was evading. In any event, it does not matter that the appellant relied on his attorney's advice for as the *Hoyland* court explained:

Hoyland contends that he did not have an evil state of mind because he was reassured by bank employees who told him that the structuring was legal. Such reassurances, of course, constituted no estoppel because the bank employees were not agents or licensees of the government. Even if the effect of these

reassurances was to make Hoyland confident that he was not committing a crime, they did not affect or alter his deliberate intention to frustrate the reporting by the banks. Under the statute, that intention made him guilty.

914 F.2d at 1130 (citation omitted).

Accordingly, if the correct result is harsh it is attributable to the law which in unusual cases, such as that here, will lead to regrettable consequences.

I am not, of course, reading intent out of section 5324(a) and should not be understood as suggesting that a person dividing a cash accumulation of over $10,000 automatically structures. Thus, a person might divide a large sum into smaller deposits for perfectly legitimate business reasons unrelated to the reporting requirements of section 5313(a). For example, a person might want to make separate deposits in different banks because of business needs for deposits in different areas.

In this case, however, the transaction admittedly was structured to evade reporting requirements. While the appellant may not have known of the source of the requirements and may have thought that his actions were perfectly legal, he has no defense to this civil action. Thus, I dissent as the district court correctly granted the government summary judgment. I would affirm.