**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Nader BAYDOUN, Defendant–Appellant.**

**No. 92–5594.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 3, 1992.

Decided Jan. 25, 1993.

---

Wendy Goggin, Asst. U.S. Atty. (argued and briefed), Ernest W. Williams, U.S. Atty., Nashville, TN, for U.S.

Alfred H. Knight (argued and briefed), Jeffrey G. Rappuhn, Willis & Knight, Nashville, TN, for Nader Baydoun.

Before MILBURN and BATCHELDER, Circuit Judges, and LIVELY, Senior Circuit Judge.

MILBURN, Circuit Judge.

Defendant Nader Baydoun appeals his conviction following a bench trial on a charge of structuring currency transactions to evade the reporting requirements of 31 U.S.C. § 5324(3). On appeal, the principal issues are (1) whether the government proved the essential elements required for a conviction under 31 U.S.C. § 5324(3), (2) whether the regulations applicable to the reporting requirements of 31 U.S.C. § 5313 require identification of the individual for whom the transaction is being made, (3) whether disclosure of the identity of defendant's client violates his right of privacy under either the Fourth Amendment or the attorney-client privilege, (4) whether the factual findings of the district court regarding defendant's credibility support his conviction, and (5) whether the defendant can be convicted as an aider or abettor. For the reasons that follow, we reverse.

## I.

### A.

On May 15, 1991, defendant Baydoun was indicted in a three-count indictment. The first two counts of the indictment charged defendant with filing false income tax returns in violation of Title 26 U.S.C. § 7201. The third count of the indictment charged defendant with a violation of 31 U.S.C. § 5324(3) for knowingly and willfully structuring a currency transaction to evade the reporting requirements of Title 31 U.S.C. § 5313(a). A superseding indict-

ment was returned on June 20, 1991. No new counts were added by the superseding indictment.

In an order dated August 14, 1991, the district court severed the trial on count three of the indictment from the trial on the first two counts. Counts one and two were later dismissed upon the government's motion. A bench trial on the third count in the indictment began on January 21, 1992. At the conclusion of all the proof, defendant was found guilty by the trial judge.

On April 20, 1992, imposition of sentence was suspended, defendant was placed on two years probation, and a $5,000 fine was imposed.

### B.

Defendant Nader Baydoun was an attorney licensed to practice in Tennessee. His practice, focusing mainly on the field of commercial litigation, was located in Nashville, Tennessee.

One of defendant's clients, an Italian citizen named Caesar Rendazzo, gave him money, either in the form of cash and/or cashier's checks, to handle during the period from August 1986 to February 1987. Defendant gave Rendazzo no receipts for the money; however, the amounts were entered in a ledger book maintained by defendant. Rendazzo testified that all the money he gave to defendant had been given to him as a gift from his mother and father in Italy.

Rendazzo testified that he gave this money to Baydoun to invest for his children and to keep his ex-wife, whom he was in the process of divorcing, "from getting hold of it." Rendazzo testified that in February 1987, he went to defendant's office with his pockets crammed full of money. Rendazzo estimated the amount of money as $15,000; however, after reviewing the ledger entries, he recalled the amount of cash as $16,700. Rendazzo gave all of the money to defendant at one time. He testified that he did not know what a currency transaction report was, that he wanted the money placed in a bank account in Mr.

Baydoun's name, and that he did not care if the money were deposited all at once.

On February 18, 1987, defendant Baydoun approached teller Vicki Stein at Sunbelt Credit Union in Nashville, Tennessee, and presented the $16,700 in cash for deposit into his fiduciary account. Ms. Stein counted the currency, added it up on her teller tape for that date, and this resulted in a record that $16,700 in cash had been tendered for deposit. Defendant made out a deposit slip for the entire amount of $16,700. However, when defendant tendered the currency and the deposit slip, Ms. Stein discussed with defendant the fact that a "form" would have to be filled out, since the amount of cash to be deposited was more than $10,000. She also told defendant that the "form" would have to reveal the source of the cash. Defendant then withdrew the currency, altered the deposit slip, and deposited only $3,000 of the cash.

Pursuant to policy, Ms. Stein reported the cash transaction to her supervisor, Betsy Bass. Ms. Bass, who knew defendant Baydoun, watched him walk away from the Sunbelt Credit Union teller window and across the lobby of the building to a teller window of a branch of the Nashville City Bank. Ms. Bass observed defendant purchase a cashier's check from the teller at Nashville City Bank. She then went to the teller's station at the bank and ascertained that defendant had purchased a cashier's check in someone else's name in the amount of $3,000.

Ms. Bass testified that over the next two days, February 19 and 20, 1987, defendant Baydoun returned to the Sunbelt Credit Union and made subsequent deposits to his fiduciary account. On February 19, 1987, defendant deposited $7,000 in cash and a $2,700 cashier's check purchased by his associate, John Harris III. On February 20, 1987, defendant deposited $1,000 in cash and the $3,000 cashier's check he had purchased from Nashville City Bank. The total of these deposits equaled the amount of the attempted initial deposit or $16,700. Subsequently, Ms. Bass reported defendant

Baydoun's transactions to the Internal Revenue Service ("IRS").

No currency transaction report ("CTR") was filed by Sunbelt Credit Union as a result of the deposits made by defendant Baydoun into his fiduciary account on February 18, 19, and 20, 1987. The parties stipulated that at all times relevant to this case, Sunbelt Credit Union was a financial institution as defined in 31 U.S.C. § 5312.

At trial, Ms. Stein, the credit union teller, testified that she could not remember the exact words of her discussion with Baydoun on February 18, 1987, but conceded that the discussion was very brief. Although she testified on direct examination that a CTR was discussed with defendant, she admitted on cross-examination that she could only recall telling defendant that a "form" would have to be filled out.

Defendant Baydoun admitted that after tendering the cash for deposit, he had a conversation with the teller at the bank about filling out a "form." He insisted that his client had instructed him not to fill out records concerning the money naming the client, and, due to such instructions, defendant took steps to avoid filling out the form at the credit union. According to defendant, Rendazzo was concerned that his ex-wife would find out about the money and claim it in their ongoing divorce proceedings. Defendant admitted that during their discussion, the teller told him "something to the effect that if you give me more than $10,000 in cash, we'll need to fill out a form." J.A. 67. Defendant also admitted that Ms. Stein told him that he would have to declare the source of the money on the form.

At trial, defendant Baydoun's associate, John Harris III, testified that he had no specific memory as to receiving the money to purchase the $2,700 cashier's check which was deposited on February 19, 1987. Harris did not recall whether he received the $2,700 from Rendazzo or defendant.

During the investigation of this case, defendant Baydoun was investigated by two IRS agents. Defendant acknowledged to one of the agents, John Gary Doble, that he had received more than $10,000 in cash at one time from another individual. Defendant told the agents that the individual, Caesar Rendazzo, requested that the cash be deposited over a period of time so that a form would not be filled out by the bank. Defendant stated that Rendazzo was going through a divorce, that he had asked him to do various weird things, and that this was one of the weird things that he had asked him to do.

Following a two-day trial, the district court found that defendant received a lump sum of $16,700 in cash from his client and that in an attempt to conceal the money from his client's former wife, defendant tendered the cash to the teller at the credit union where he maintained his fiduciary account on February 18, 1987. The court further found that the teller told defendant he would need to fill out a currency transaction form for the entire transaction, which form would include a declaration as to the source of the money. The court found that after receiving such information, defendant asked for the cash back, scratched out the amount originally written on the deposit slip, and tendered only $3,000 for deposit. The court found that defendant then walked across the lobby to Nashville City Bank and converted $3,000 of the cash to a cashier's check payable to Caesar Rendazzo.

The court further found that the proof also established that the next day, February 19, 1987, defendant deposited $7,000 cash and the $2,700 cashier's check purchased by his associate into the fiduciary account. Further, on the third day, February 20, 1987, defendant made a deposit into the fiduciary account of $1,000 cash and the $3,000 cashier's check from Nashville City Bank. Thus, the court found that defendant accomplished the total deposit of $16,700 into his fiduciary account in a series of transactions over a three-day period.

The court then made further findings of fact and conclusions of law as follows:

I find that the proof establishes beyond a reasonable doubt in my mind that when confronted with the necessity to make a Currency Transaction Report that Mr. Baydoun structured these transactions

with the explicit purpose of evading what he knew to be the bank's duty to file a report as required by law with regard to transactions exceeding $10,000, and in doing so he did it voluntarily and intentionally, dividing these deposits up over a period of three days and with the purpose of evading or causing the bank to evade the reporting requirements.

I reject the suggestion that it was done for the purpose of concealing Mr. Rendazzo's connection with these funds. That makes no sense to the court. After having this conversation with the teller, he first tendered the money, but when he was told that it was going to result in a required filing of a form by the bank that would require the identity of the source of those funds, he had the monies shoved back to him, leaving for deposit only 3,000, but then walked right across that bank floor and purchased a cashier's check in the name of his client Caesar Rendazzo, which flat out revealed his connection with at least $3,000 of that transaction and put it in the bank's record.

And I find that that explanation simply is not credible and I cannot accept it. And I'm left with the firm conviction in my own mind that, and so find and conclude, that these transactions were structured over a period of three days, and that these funds were, in part, converted to cashier's checks as a part of a masking of the transaction converting this horde of cash, in part, to cashier's checks and that they were dribbled in in increments over a period of three days, all of which were under the reporting requirements and it was done by Mr. Baydoun deliberately, knowingly and intentionally, and accordingly I find the defendant guilty beyond a reasonable doubt on count three of the superseding indictment.

J.A. 152–53. This timely appeal followed.

## II.

Defendant Baydoun argues that evidence presented at his trial failed to establish all the essential elements required for a conviction under 31 U.S.C. § 5324(3). First, defendant asserts that a conviction under the anti-structuring statute requires proof that he knew that cash deposits in excess of $10,000 were subject to being reported to the I.R.S. under 31 U.S.C. § 5313(a). Second, defendant asserts that the government failed to show that he acted "willfully" to evade the reporting requirements. Third, he asserts that there was no concealment of material information from the government.

■ The standard of review for claims of insufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Moreover, circumstantial evidence is entitled to the same weight as direct evidence in determining whether there is sufficient evidence to support a guilty verdict. *See Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954).

■ Furthermore, in criminal cases tried by the court, factual findings made by the trial judge stand unless determined to be so clearly erroneous as to justify overturning the conviction. *United States v. Jabara*, 644 F.2d 574, 577 (6th Cir.1981); *United States v. Atwell*, 570 F.2d 650, 652 (6th Cir.1978); *United States v. Marley*, 549 F.2d 561 (8th Cir.1977). A district court will be deemed to have committed clear error when the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *See Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)).

The Bank Secrecy Act, 31 U.S.C. §§ 5313–5326, authorizes the Secretary of the Treasury to issue regulations requiring domestic financial institutions to report currency transactions in which they are engaged. Exercising this authority, the

Secretary has promulgated a regulation requiring such institutions to report to the Internal Revenue Service currency transactions involving over $10,000. *See* 31 U.S.C. § 5313(a); 31 C.F.R. § 103.22(a)(1).

31 U.S.C. § 5324(3) provides in relevant part:

> No person shall for the purpose of evading the reporting requirements of section 5313(a) with respect to such transaction—
>
> \* \* \* \* \* \*
>
> (3) structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions.

█ The essential elements that the government must prove in establishing a violation of 31 U.S.C. § 5324(3) are (1) that the defendant knew that the bank was legally obligated to report transactions exceeding $10,000, and (2) that the defendant sought to deprive the government of the information to which it was entitled by structuring transactions to avoid the reporting requirement. *See United States v. Rogers,* 962 F.2d 342, 344 (4th Cir.1992); *United States v. Brown,* 954 F.2d 1563, 1568 (11th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 284, 121 L.Ed.2d 210 (1992); *United States v. Davenport,* 929 F.2d 1169, 1173 (7th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 871, 116 L.Ed.2d 776 (1992); *United States v. Scanio,* 900 F.2d 485, 489–90 (2d Cir. 1990). However, in *Rogers,* it is stated: "We conclude that a criminal conviction for willfully violating § 5324(3) may be sustained as long as the prosecution proves that the defendant had knowledge of the currency reporting requirements and acted to avoid them."

A review of the record shows that when defendant Baydoun presented the $16,700 in cash to the teller for deposit and was confronted with the necessity of filling out a "form," which would include the source of the cash, he altered the deposit slip, thereby reducing the amount of the deposit below the level which would require reporting of the cash transaction. Baydoun immediately left the teller's window at the credit union and walked across the lobby of the building to a teller window of a branch of the Nashville City Bank, where he purchased a cashier's check in the amount of $3,000.

█ We believe that the fact that Baydoun, a lawyer, would attempt to deposit $16,700 in cash in his trust account but then declined to do so when advised that deposits in excess of $10,000 would require the filling out of a "form" revealing the source of the cash demonstrates without question that Baydoun was not aware of any reporting requirement under the law when he arrived at the credit union. In this connection, we find significant the colloquy which occurred between the court and counsel for the government during final argument as to whether the government was required to prove that defendant acted for the purpose of "depriving the Internal Revenue Service of relevant information."

> [The Court] The government almost has to concede, or does the government concede that when he [the defendant] walks up to that counter, with the $16,700.00 in cash, at that point you would have to say, wouldn't you, that he didn't have any consciousness of a reporting requirement and that he had a present intention of walking in there with that horde of money to deprive the government of knowledge of anything through evading the reporting requirements?
>
> [Counsel] I don't even have to admit or deny that because it doesn't make any difference.
>
> [The Court] Well, it makes a difference to me ... The question whether this man had the requisite criminal intent to commit this crime, that is, to intentionally and purposely structure these transactions so as to evade the reporting requirement and deprive the Internal Revenue Service of information that the government, that the Congress has said they are entitled to ...

J.A. 136, 137.

The court was particularly troubled by the fact that the money belonged to Mr.

Rendazzo, who had no apparent motive or purpose to evade IRS reporting of it:

> Why would the lawyer—there's nothing to suggest the lawyer has a purpose himself in this transaction, to structure it. The only reason, the only common sense reason is that he's in cahoots with Rendazzo. I mean that has to be the given in the government's case. . . .
>
> [W]hen did the intent come in and for what purpose? What purpose was being served? Rendazzo said he had these fears that his wife was going to get bad people in this country to come and strong arm him, or something about the system required it to be disclosed and she could get it, but it's all honest money, and I didn't have anything to hide, and there's nothing to suggest that he did. Then where is the common sense of all this?
> . . .
> [I]t indicates to me that there's no consciousness of guilt when he walks up to the counter in the first instance. And if that's the case, if that's the case, then that sort of moots the suggestion that there was something cooked up between him and Rendazzo to split this up and conceal it.

J.A. 138, 139, 140. The above comments by the district judge, which are supported by the record, are in clear conflict with his later findings of fact and conclusions of law.

Moreover, if defendant Baydoun was attempting to violate § 5324(3), common sense tells us that he would not have stayed in the same bank and/or credit union to make his deposits over a three-day period. All of his actions in that regard give credence to his insistence that he was only told by Ms. Stein that a "form" listing the source of the cash would have to be filled out since the deposit was in excess of $10,000. Ms. Stein admitted on cross-examination that she could only recall telling defendant that a "form" would have to be filled out. Thus, we conclude from the record that Ms. Stein never told the defendant that the "form" was a governmental requirement or that the form was a Currency Transaction Report (CTR). Therefore, the district court's finding "that when confronted with the necessity to make a Currency Transaction Report that Mr. Baydoun structured these transactions with the explicit purpose of evading what he knew to be the bank's duty to file a report as required by law with regard to transactions exceeding $10,000, and in doing so he did it voluntarily and intentionally . . . with the purpose of evading or causing the bank to evade the reporting requirements" is clearly erroneous. There is no evidence in the record that defendant had the intent to deprive the government of anything or to structure currency transactions to evade the reporting requirements of 31 U.S.C. § 5324(3). Defendant might well have assumed that the "form" which Ms. Stein referred to was for the credit union's internal use.

In *United States v. Davenport*, 929 F.2d at 1172–73, it is stated that

> [t]he target of the statute [§ 5324(3)] was not banks, or cash transactors viewed as the accomplices of banks in violating the requirements that the Treasury Department imposes on banks. The target was the transactors—the "money launderers," a term we use broadly to denote persons desiring to convert "hot," suspiciously large, or easily traced cash sums into more discreet media of exchange—themselves. The statute's aim was to prevent people from either causing the (usually innocent) bank to fail to file a required report or defeating the goal of the requirement that large cash deposits be reported to the Internal Revenue Service by breaking their cash hoard into enough separate deposits to avoid activating the requirement. S.Rep. No. 433, 99th Cong., 2d Sess. 22 (1986); *United States v. Scanio, supra,* 900 F.2d at 488.

\*　\*　\*　\*　\*　\*

The "evading" of which section 5324(3) speaks is the attempt to split up a cash hoard in such a way as to defeat the government's efforts to identify money launderers. . . .

In this connection, we find it most significant that at oral argument, counsel for the

government conceded that the cash in question was nontaxable and that drug monies were not involved. Thus, it is clear that there was no attempt by defendant Baydoun to engage in money laundering or to evade taxes due the IRS.

From the foregoing, we conclude that even viewing the evidence in the light most favorable to the government, the government failed to prove beyond a reasonable doubt the essential elements to establish that defendant Baydoun violated 31 U.S.C. § 5324(3) and that the district court committed clear error in finding defendant guilty. Accordingly, the district court's judgment of conviction is REVERSED, and this case is DISMISSED.[1]

---

1. Having determined that the government failed to prove the essential elements under 31 U.S.C. § 5324(3) to convict defendant Baydoun, it is not necessary for us to consider defendant's other assignments of error.