1 F.3d 1243
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Camille TODARO, Defendant-Appellant.
 No. 92-3742.
 United States Court of Appeals, Sixth Circuit.
 July 12, 1993.
 
 Before NELSON and SUHRHEINRICH, Circuit Judges; EDMUNDS, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant Camille Todaro appeals his conviction following a jury trial on charges of structuring currency transactions to evade the reporting requirements of 31 U.S.C. Sec. 5324(3). Defendant contends that (1) the government failed to meet its burden of proving that defendant was aware of and purposefully acted to avoid the currency transaction reporting requirement, and (2) the district court erred in denying his motion for a new trial based on post-trial testimony from a witness. For the following reasons, we AFFIRM.
 
 I.
 
 2
 In 1987 Marie Todaro, the daughter of defendant, applied for a mortgage loan on a piece of real estate she owned, located at 9120 Ranch Drive in Chesterland, Ohio. On December 21, 1987, Park View Federal Savings and Loan issued an escrow check to Marie Todaro in the amount of $47,518.06. The following day Marie Todaro returned to the savings and loan to cash the check. She was accompanied by defendant and Peter Christ, a retired executive vice-president of Park View Federal. Park View Federal administrative assistant Helen Kraynak informed the party that before cashing the check she would have to "set the vault," which would cause a fifteen minute delay, and to "fill out a CTR report." It is undisputed that Kraynak did not explain what a "CTR" was.
 
 
 3
 Christ told Kraynak, in defendant's presence, that defendant did not want cash, but "only $9,500 in cash and the rest in checks broken down in $9,500 increments and the balance as a check." When Kraynak explained that she would still have to prepare a CTR, Christ again objected, and directed Kraynak to contact Keith Swaney, an executive vice-president of the bank and Christ's son-in-law. After consulting with Swaney, Kraynak issued the loan proceeds as requested and did not submit a CTR to the Internal Revenue Service. Kraynak handed the cash and four cashier's checks to defendant, who immediately had his daughter sign the checks and return them to him. The checks were cashed on separate days between December 24, 1987 and December 29, 1987. Three were cashed at Parkview Federal; one at Huntington Bank.
 
 
 4
 In May 1988, Marie Todaro again sought a mortgage loan in the amount of $50,000 on another piece of her real estate property, located at 14940 Crestwood Road, Middlefield, Ohio. Donna Montagna, the Parkview Federal loan officer who conducted the second transaction, testified at trial that after the loan to Marie had been approved, defendant telephoned Montagna and requested that the loan proceeds be issued in the form of checks made out for $9,500. Montagna stated that she informed defendant she would have to ask the escrow department if it was possible to issue more than one check. After speaking with Bob Valerino, the senior escrow clerk, the proceeds were broken up into six separate checks, each less than $10,000. The checks were cashed on separate days between June 28, 1988 and August 2, 1988. Three of the six checks were cashed at Parkview Federal; the three remaining at two other banks.
 
 
 5
 In the summer of 1989, Maria Todaro sold the Ranch Drive property. On July 11, 1989, she negotiated the $40,691.29 proceeds check from Society National Bank at Parkview Federal. Kraynak testified that each of the four cashier's checks was made out to Maria Todaro for the respective amounts of $8,500, $7,500, $9,000, and $6,000. Kraynak also testified that she had no recollection of at all of this transaction, despite the fact that her name appeared on each of those checks.
 
 
 6
 On October 7, 1991, defendant and his daughter, Marie Todaro, were charged in a three-count indictment with structuring three transactions for the purpose of evading the reporting requirements of 31 U.S.C. Sec. 5315(a), in violation of Sec. 5324(3). Count 1 was directed at the mortgage loan proceeds on the Ranch Drive property. Count 2 involved the proceeds from the mortgage loan on the Crestwood Road property. Count 3 concerned the sale of the proceeds of the Ranch Drive property. Both defendants pled not guilty. The defendants' actions were severed, and defendant's case proceeded to trial on May 4, 1992. On May 12, 1992, the jury acquitted defendant on Counts 1 and 3 and convicted on Count 2.
 
 
 7
 Two weeks after the conclusion of defendant's trial, Montagna contacted Special Agent Thomas Himes, and informed him that she remembered more details of her conversation with defendant regarding the Crestwood Road loan proceeds. Defendant thereafter filed a motion for judgment of acquittal and/or for new trial. At a post-trial hearing held on June 15, 1992, Montagna testified that:
 
 
 8
 [W]hen [Todaro] first called he asked me in some fashion could he have cash from escrow. And I said I don't know, I kind of laughed either to myself, I don't think I laughed out loud, but I said something like, "you know, escrow doesn't have cash. Escrow only has checks. You know, that's all they have." And he hesitated. I felt like he was upset. I don't know what he said, "that upsets me" or whatever or it was something I felt. And I said, "would it help you if we could break the checks down like you did before or like you did when you were here with Pete" or something like that. And he said, "yes, make them for the $9500." And I still had to check with Bob Valerino to make sure that wasn't against policy that we could do.
 
 
 9
 The district court, in a written opinion, denied the motion, concluding that the newly-discovered evidence did not change the fact that defendant "had a choice," and that he chose to structure the transaction to avoid the CTR. This appeal followed.
 
 II.
 
 10
 Under 31 U.S.C. Sec. 5313(a) and implementing regulations, banks and other financial institutions are required to report to the Internal Revenue Service any cash deposit over $10,000, and to treat multiple deposits made on the same day as a single transaction if they exceed $10,000 in the aggregate. 31 U.S.C. Sec. 5313(a) (1983); 31 C.F.R. 103.22(a)(1). Section 5324(a) of Title 31 in turn provides that "[n]o person shall for the purpose of evading the reporting requirement of section 5313(a), ... or the regulations issued thereunder ... with respect to such transaction--(3) structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions." 31 U.S.C. Sec. 5324(a)(3) (Supp.1993).
 
 
 11
 In order to establish a violation of 31 U.S.C. Sec. 5324(a)(3), the government must prove "(1) that the defendant knew that the bank was legally obligated to report transactions exceeding $10,000, and (2) that the defendant sought to deprive the government of the information to which it was entitled by structuring transactions to avoid the reporting requirement." United States v. Baydoun, 984 F.2d 175, 180 (6th Cir.1993) (citations omitted). In Baydoun, we emphasized that "a criminal conviction for willfully violating Sec. 5324(3) may be sustained as long as the prosecution proves that the defendant had knowledge of the currency reporting requirements and acted to avoid them." Id. (quoting United States v. Rogers, 962 F.2d 342, 345 (4th Cir.1992)).
 
 A.
 
 12
 Defendant claims that the district court erred in denying his motion for acquittal because the evidence was insufficient to demonstrate that defendant knew or should have known that the Crestwood Road transaction would activate a duty on the part of the bank to file a currency transaction report, or that he acted to avoid this duty. Defendant's argument has two prongs: first, that his acquittal on the first transaction involving the Ranch Drive residence (Count 1) prevents an inference of knowledge of currency reporting requirements; and second, that his initial request for the entire $46,463.47 of loan proceeds in cash on the Crestwood Road transactions (Count 2) further demonstrates that he was not aware of any reporting requirements and if aware, did not take steps to avoid them. Only the first, however, is properly evaluated under an insufficiency of the evidence standard for the obvious reason that the jury did not consider Montagna's post-trial statements. That standard is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Viewed from this perspective, the record supports defendant's conviction on Count 2. As pointed out by the government, the defendant had a motive to structure the transactions so as to avoid the reporting requirements. IRS Special Agent Himes testified that defendant had told him that it was a "lie" that Marie Todaro's name was on the loan application, and at the time the transaction occurred, defendant owed the IRS almost twenty thousand dollars in wagering and income taxes and interest and penalties; which the IRS could have attempted to collect the loan proceeds from defendant once they came into his possession to satisfy his tax liability. Cf., United States v. Davenport, 929 F.2d 1169, 1174 (7th Cir.1991) (if cash were stolen, defendants would have every incentive to conceal it, if only because stolen money is taxable income), cert. denied, 112 S.Ct. 871 (1992). Secondly, as pointed out by the government and held by the district judge in his opinion denying the motion for a new trial, the jury was free to infer knowledge on the part of defendant from his relationship with Christ. The January 1988 telephone call by Christ to Elizabeth Curschman demonstrates that Christ was still involved with defendant vis-a-vis the loan proceeds, and that by the time of the defendant's telephone to Montagna concerning the second transaction, Christ would have explained the nature of the bank's reporting requirements to him.
 
 
 13
 Contrary to defendant's suggestion, the facts relating to the count on which he was acquitted may establish the requisite knowledge to sustain a conviction on the Crestwood transaction because the acquittal on Count 1 does not constitute res judicata on any other charge in the indictment. Dunn v. United States, 284 U.S. 390, 393 (1932); United States v. Clemmer, 918 F.2d 570, 573 (6th Cir.1990). Further, the evidence would be properly admitted under Fed.R.Evid. 404(b) to establish the requisite knowledge for a conviction on the Crestwood Road transaction. Finally, the structure of the second transaction creates a strong inference that defendant knew of and attempted to evade the reporting requirements. Defendant instructed Montagna to issue six checks in the amount of $9,500 or less and had all of the checks converted to currency on different days at different banks.
 
 B.
 
 14
 Defendant also appeals the denial of his motion for a new trial based on newly discovered evidence under Fed.R.Crim.P. 33.[1] This court reviews for an abuse of discretion. United States v. Barlow, 693 F.2d 954, 966 (6th Cir.1982), cert. denied, 461 U.S. 945 (1987).
 
 
 15
 The government acknowledges that Todaro first asked for cash from escrow from Montagna, but maintains that the balance of Montagna's trial testimony and all the other evidence against defendant remained unchanged: (1) that Todaro did not want a single check to be cashed; (2) that he directed that the checks be issued in amounts less than $9,500; (3) that he had the checks cashed at different banks on different days.
 
 
 16
 The government's first two factors do not necessarily follow from Montagna's post-trial statement, given the import of Montagna's post-trial testimony that it was she, not defendant, who first suggested breaking up the loan proceeds as previously prescribed by Christ, leaving room for an argument that defendant acquiesced in the arrangement but did not engineer it. Notwithstanding, the fact that defendant had the checks cashed at different banks on different days is strong evidence of knowledge of, and intent to avoid, the bank's reporting requirements. That is, if, as defendant suggests, he had truly desired the $46,000 in cash as initially requested, there was absolutely no reason why he would have the checks cashed on different days at different banks. Defendant's conduct is at odds with the purportedly innocent initial request for a lump sum in cash, and it can be inferred therefrom that defendant had the requisite mens rea to uphold his conviction. We evaluate this circumstantial evidence just as we would direct evidence. Baydoun, 984 F.2d at 179 (citation omitted). This conclusion is bolstered by an apparent motive to conceal, and the circumstantial evidence of defendant's knowledge of the reporting requirements from Peter Christ as discussed above. In sum, the most that can be said of Montagna's post-trial testimony is that it would "at best have created a conflict in the evidence rather than a likelihood of acquittal," and therefore would not likely have resulted in an acquittal. United States v. Scaife, 749 F.2d 338, 349 (6th Cir.1984).
 
 
 17
 Defendant's case bears only a superficial resemblance to Baydoun. Unlike Baydoun, the government established proof of a motive to hide cash from the IRS. Cf., Baydoun, 984 F.2d at 181-82) (finding significant the fact that government conceded that the cash in question was nontaxable and that drug monies were not involved). Further, Baydoun, in contrast to defendant, remained with the same bank to make his deposits over a three-day period, thereby giving credence to his argument that he had no knowledge of the CTR requirements. Id. at 181.
 
 
 18
 Thus, Baydoun does not support defendant's position. In sum, we find no basis for reversal. AFFIRMED.
 
 
 
 *
 Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Motions for newly-discovered evidence are governed by the following standards:
 (1) the new evidence was not discovered until after the trial;
 (2) the evidence could not have been discovered earlier through due diligence;
 (3) the evidence is material and not merely cumulative or impeaching; and
 (4) the evidence would likely produce an acquittal.
 United States v. Barlow, 693 F.2d 954, 966 (6th Cir.1982), cert. denied, 461 U.S. 945 (1987).