UNITED STATES of America,
Plaintiff–Appellee,

v.

REAL PROPERTY 6185 BRANDY-
WINE DRIVE, Holly, Groveland
Township, Oakland County, Michigan
Defendant,

John Keith Blakely and John Emmett
Long, Movants–Appellants.

Nos. 01–1680, 01–2042.

United States Court of Appeals,
Sixth Circuit.

June 3, 2003.

Before: BOGGS, SUHRHEINRICH,
and CLAY, Circuit Judges.

BOGGS, Circuit Judge.

John Keith Blakely and John Emmett Long appeal the district court's denial of their reiterated motions to vacate, pursuant to Fed.R.Civ.P. 60(b), a 1992 civil forfeiture proceeding against them. In that action, based on appellants' violation of the civil currency-structuring laws, a consent judgment was entered in which they forfeited . significant real and personal property. While appellants were serving a prison sentence, based on their charged violation of the criminal currency-structuring laws and their undisputed tax evasion, the Supreme Court clarified the meaning of the criminal currency-structuring law with the effect that appellants' proven conduct was no longer legally sufficient to sustain the criminal conviction. Since that time, appellants have attempted various legal remedies to recover the property they lost in their civil forfeiture for cur-

rency-structuring. Here they appeal Judge Gadola's denial of their Rule 60(b) motions to vacate the civil judgment. While that appeal was pending before this court, they filed a motion to disqualify Judge Gadola and appealed its denial. We consolidated their appeals and now affirm the district court on all issues.

I

Appellants and their wives jointly ran Country Folk Art Shows, Inc., a business that organized arts and crafts shows and collected fees from visitors and vendors. Appellants and their wives deposited the significant cash receipts of the business in their personal accounts in eight different banks, mostly in deposits of less than $10,000 each. Personal and corporate income taxes were not paid on the full amount of these receipts.

Following an Internal Revenue Service investigation, appellants were charged both civilly and criminally. In the civil complaint, the United States sought the forfeiture of the appellants' real property listed in the caption of this case, other real and personal property, and numerous bank accounts, pursuant to the Money Laundering Control Act of 1986, 18 U.S.C. § 981 (authorizing forfeiture of property involved in violations of the currency-structuring law, 31 U.S.C. § 5324). Appellants entered into a stipulation forfeiting property worth more than $4 million.[1] The district court approved the stipulation and entered a consent judgment. In the criminal indictment, appellants were charged with violation of 31 U.S.C. § 5322 (providing criminal penalties for wilful violation of

§ 5324) and 26 U.S.C. § 7201 (tax evasion). Blakely and Long pleaded guilty to the tax evasion and currency-structuring charges, while their wives pleaded guilty to tax evasion only. During the guilty pleas, Blakely and Long admitted that they had deliberately structured their cash deposits so as to avoid the legal requirement of Cash Transaction Reports ("CTRs") and to hide their income. However, they did not clearly admit that they were *aware* that structuring deposits in order to avoid the CTR requirement was itself an offense. Appellants also entered an agreement with the IRS to pay an additional $5.3 million in back taxes for themselves and Country Folk. Blakely and Long were sentenced to twenty-one months on both the tax evasion and the structuring counts, to be served concurrently.

While Blakely and Long were still serving their prison terms, the Supreme Court decided *Ratzlaf v. United States*, 510 U.S. 135, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994). In *Ratzlaf*, the court construed the willfulness requirement of § 5322 to make an element of the offense the defendant's knowledge, not merely of the reporting requirement, but also that structuring payments so to avoid the reporting requirement itself was an offense. *Id.* at 149.[2] After Blakely and Long had been released from prison, they filed unopposed § 2255 motions to vacate their criminal structuring convictions pursuant to *Ratzlaf*. The district court granted their motions and the government dismissed the structuring charges. As the tax evasion convictions were unaffected by *Ratzlaf* and resulted in

1. This property included all property claimed by the United States, except the captioned property. The Longs were permitted to retain that property, 6185 Brandywine Drive, and it is not at issue in this case.

2. Congress promptly overrode this holding statutorily. Pub.L. No. 103–325, § 411(a) (1994). Of course, for purposes on the present case, we must follow the construction of the statute in effect at the time of the underlying conduct.

concurrent sentences of equal length, the decision did not alter the validity of their incarceration.

Two years after their release from prison, appellants submitted their first Rule 60(b) motion attacking the civil forfeiture judgment against them. District Judge Gadola, after consideration under each Rule 60(b) subheading, denied the motion. Appellants filed a timely notice of appeal. On the same day, appellants brought their second Rule 60(b) motion asking for reconsideration under 60(b)(4) and (5). Pending the resolution of their second Rule 60(b) motion, appellants sought and received a stay of the appeal. Appellants also sought to have the case assigned to a different judge. The district court denied the second Rule 60(b) motion and the motion to assign the case to a different judge. Appellants did not appeal this denial or seek to reactivate the pending, but stayed, appeal.

Instead, appellants filed their third and fourth Rule 60(b) motions in district court. While these motions were pending, we set a briefing schedule for the original appeal. The district court denied the third and fourth Rule 60(b) motions on the basis that the court of appeals now had exclusive jurisdiction. The district court also indicated that it would impose sanctions on appellants and their counsel should they again file a Rule 60(b) motion on the same grounds. In response, appellants sought and were granted voluntary dismissal of their original appeal and filed their fifth Rule 60(b) motion in district court. The district court denied that motion, because appellants had exhausted their remedies with the dismissal of their appeal, and imposed *sua sponte* a $1,000 Rule 11 sanc-

tion on Appellant's counsel. Two weeks later, the district court, realizing that the sanction had not been imposed in conformity with Rule 11, *sua sponte* vacated the sanction. Nevertheless, appellants moved to disqualify Judge Gadola, pursuant to 28 U.S.C. § 455(a). Without awaiting the outcome of their motion to disqualify, appellants filed a new appeal of most of the district court's previous denials of their motions. At this point, the district court denied the motion to disqualify, both for lack of substantive merit and because of the absence of any case pending before it. Appellants filed a separate, timely appeal of the denial of their motion to disqualify. Before the court here is both the appeal of the denial of the Rule 60(b) motions and the appeal of the denial of the motion to disqualify.[3]

## II

Federal law imposes on banks a reporting requirement for certain currency transactions. "When a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency ... under circumstances the Secretary prescribes by regulation, the institution and any other participant in the transaction the Secretary may prescribe shall file a report on the transaction." 31 U.S.C. § 5313(a) (1992).

> Each financial institution ... shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution which involves a transaction in currency of more than $10,000. Multiple currency transactions shall be treated as a single transaction if the financial institution has knowledge that

---

**3.** While this action was proceeding, appellants also prosecuted a separate action against the United States and other defendants, based on many of the same arguments. We considered and rejected their claims. *Blakely v. United States,* 276 F.3d 853 (6th Cir.2002).

they are by or on behalf of any person and result in either cash in or cash out totalling more than $10,000 during any one business day.

31 C.F.R. § 103.22(a)(1) (1992). While § 103.22(a)(1) by its terms is directed only at domestic financial institutions, the statute also prohibits any person from "caus[ing] or attempt[ing] to cause a domestic financial institution to fail to file a report required under § 5313(a)," 31 U.S.C. § 5324(1) (1992), or "caus[ing] or attempt[ing] to cause a domestic financial institution to file a report required under § 5313(a) that contains a material omission or misstatement of fact," 31 U.S.C. § 5324(2) (1992). All of these provisions are only triggered when the bank was under an obligation to file a report.

A federal statute also prohibits certain activity not predicated on the existence of a bank's reporting requirement. "No person shall for the purpose of evading the reporting requirements of § 5313(a) with respect to such transaction ... structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions." 31 U.S.C. § 5324(3). Regulations refine the meaning of this section. "No person shall for the purpose of evading the reporting requirements of § 103.22 with respect to such transaction ... [s]tructure (as that term is defined in § 103.11(n)[4] of this Part) or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions." 31 C.F.R. § 103.53(c) (1992).

For purposes of § 103.53, a person structures a transaction if that person, acting alone, or in conjunction with, or on behalf of, other persons, conducts or attempts to conduct *one or more transactions in currency, in any amount, at one or more financial institutions, on one or more days,* in any manner, for the purpose of evading the reporting requirements under § 103.22 of this Part. 'In any manner' includes, but is not limited to, the breaking down of a single sum of currency exceeding $10,000 into smaller sums, including sums at or below $10,000, or the conduct of a transaction, or series of currency transactions, including transactions at or below $10,000. The transaction or transactions need not exceed the $10,000 reporting threshold at any single financial institution on any single day in order to constitute structuring within the meaning of this definition.

31 C.F.R. § 103.11(p) (1992) (emphasis added).

Both Long and Blakely, as part of their criminal guilty pleas, explicitly admitted that they made multiple cash deposits at multiple banks for the purpose of avoiding the reporting requirement. Therefore they violated § 5324(3). Against this simple, straightforward conclusion, they raise an exhaustive, yet easily disposed of, list of objections.

■ Appellants go to great lengths to argue that they arranged their transactions so as to avoid ever triggering any bank's reporting obligation. Hence appellants may have been innocent of violating § 5324(1) and (2).[5] However, that is irrel-

---

**4.** This reference is erroneous. Section 103.11(n) contained the definition of 'person.' The definition of structuring was actually contained in § 103.11(p). At present, the prohibition against structured transactions itself has moved from § 103.53(c) to § 103.63(c), but it still erroneously points to § 103.11(n)

for the definition of structuring, rather § 103.11(gg), where it has in fact found its current home.

**5.** But we note that the Longs, on ten separate occasions, made identical cash deposits of sums between $8,000 and $9,500 into each of

evant as they were never charged with violating these provisions. They were charged with violating § 5324(3), which does not require the existence of a bank reporting obligation. *See United States v. Davenport,* 929 F.2d 1169, 1172–3 (7th Cir. 1991) (Posner, J., comprehensively interpreting the distinction between § 5324(1) and (2) and § 5324(3)). Appellants seem to argue that the application of § 5324(3) is restricted to a particular type of scheme in which cashier's checks from several banks are deposited in one bank, but they cite no statutory, regulatory, and precedential authority for such a restriction.

Appellants place great significance on the holding of *Ratzlaf* that, because § 5322 only criminalizes wilful violations of § 5324, conviction requires a jury finding that the defendant knew that structuring was unlawful. 510 U.S. at 149. Appellants point out that during their criminal proceeding three years before *Ratzlaf, inter alia* for violation of § 5322, no such knowledge on their part was alleged or proven. This lack eventually, and rightly, resulted in the vacatur of their § 5322 criminal conviction. However, under consideration here is not appellants' criminal conviction under § 5322, but their civil forfeiture under 18 U.S.C. § 981(a). While both § 981(a) and § 5322 were triggered by appellants' violation of § 5324, the Court did not find the wilfulness (and, hence, knowledge) requirement in § 5324, but only in § 5322. *Ratzlaf* explicitly cites § 981(a) as an example of a statute without a wilfulness requirement. 510 U.S. at 146 n. 16. Therefore, there is no wilfulness requirement in the law under which appellants forfeited their property. The lack of proof of appellants' knowledge that struc-

turing itself was illegal is irrelevant to the case at bar.

Next, appellants cite *United States v. Dollar Bank Money Market Account No. 1591768456,* 980 F.2d 233 (3d Cir.1992). In that case, the court reversed and remanded the grant of summary judgment to the United States in a civil forfeiture action under § 781(a) and § 5324. *Id.* at 242. The court reasoned that a person could structure deposits for the purpose of evading the legal reporting requirement only if the person knew that the law imposed such a requirement. *Id.* at 238. In that case, there was a genuine issue of material fact as to whether claimant knew that CTRs were required by law or believed that they were merely a matter of bank policy. *Ibid.* However, "[t]he claimant cannot avoid forfeiture solely because the owner (often himself) did not know that structuring is illegal." *Ibid.* As that is appellants' allegation here. *Dollar Bank* does not support, but actually contradicts, their argument. Moreover, appellants cannot argue that they did not know that the CTR requirement was imposed by law, as they freely admitted so during their guilty pleas. Finally, even if they were to contend that they did not know that the CTR requirement was imposed by law, they forfeited that argument by failing to make it their original civil case, because "[i]n a civil forfeiture case, the claimant has the burden of proof regarding *mens rea."* *Id.* at 238 n. 2.

Appellants also put great emphasis on the district court's statement in vacating their criminal currency-structuring convictions that there was no evidence in their criminal trial that "either [Appellant] believed that they were ... depriving the

three separate accounts in their names in the same bank on the same day. Each of these triple deposits can be construed as a single transaction attempting to evade a required

CTR, in violation of § 5224(a)(1). Appellants' table summarizing these deposits is misleading to a degree approaching fraud. Brief for Appellants at 13–14 (No. 01–1680).

government of any information that it was entitled to have." In a criminal context, we have held that it is an "essential element[ ] ... of a violation of 31 U.S.C. § 5324(3)" that "the defendant sought to deprive the government of the information to which it was entitled by structuring transactions to avoid the reporting requirement." *United States v. Baydoun,* 984 F.2d 175, 180 (6th Cir.1993). But we need not here decide the preclusive effect of a single line in an uncontested order, which by its own terms confines itself exclusively to the criminal case, on this civil forfeiture action, especially when it is contradicted by appellants' statements in their guilty pleas, as well as the district court's statements that were more directly on point. It suffices to point out, again, that in a civil forfeiture proceeding appellants bore the burden of proof with respect to their mental state, and if, in fact, there had been no evidence, they would have lost by virtue of that very absence.

Appellants also attack the civil forfeiture judgment as product of prosecutorial duress and fraud, in violation of the Due Process Clause. However, they fail to allege any specific prosecutorial misconduct beyond the ordinary carrots and sticks of settlement and plea negotiations and, at worst, a prosecutorial misapprehension of the law. Appellants cite no authority for the proposition that such acts constitute a due process violation, in particular considering that they had access to counsel, resources, and time for consideration. Appellants also claim that their civil forfeiture was void and baseless under *Li-*

*bretti v. United States,* 516 U.S. 29, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995). We already considered at length and rejected these same arguments by the same parties. *See Blakely,* 276 F.3d at 866-68.

### III

Appellants also challenge Judge Gadola's denial of their motion that he disqualify himself, pursuant to 28 U.S.C. § 455(a) ("Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."). Appellants cite no evidence of an extrajudicial source for any bias in Judge Gadola.[6] Instead they rely on the holding of *Liteky v. United States,* 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994), that a bias that "springs from the facts adduced or the events occurring at trial" can be sufficient if "it is so extreme as to display clear inability to render fair judgment." *Id.* at 551. The Court, while conceding the possibility of such bias, made clear how extraordinary such a finding of bias is. "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Id.* at 555 (citing *United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966)). They can "[o]nly in the rarest circumstances evidence the degree of favoritism or antagonism required ... when no extrajudicial source is involved." *Ibid.* "Almost invariably, they are proper grounds for appeal, not for recusal." *Ibid.*

---

**6.** There are allegations of shadowy machinations of an "extremist forfeiture faction ... in the United States Department of Justice," motivated "by the thrill of outlawry," whose "agents persuade gullible United States Attorneys to conduct prosecutions based on imaginary laws." Brief for Appellants at 16–17 (No. 01–2042). Appellants do not allege that

Judge Gadola is a current or former member of that faction, though they do speculate, without factual basis, that Judge Gadola "is getting to be a hero to persons with whom he has frequent contact," presumably the recipients of the forfeited property. Brief for Appellants at 36 (No. 01–2042).

Appellants attempt to meet this heavy burden by showing that Judge Gadola refused to consider yet another time their iterated contention that the civil forfeiture was void. Even if Judge Gadola was incorrect on that issue, a refusal to be hectored by appellants into changing his opinion on that issue, after having given his reasoning to the contrary conclusion repeatedly, preferring correction, if it were to come, to come from this court, is no proof of that exceptionally rare judicial ruling that constitutes valid basis for a disqualification motion. Moreover, Judge Gadola was not incorrect, as we made clear when in *Blakely* we granted preclusive effect to that allegedly void judgment, despite being presented by appellants with the same argument as we are here. *Blakely*, 276 F.3d 853, 866–68. Judge Gadola's *sua sponte* imposition of Rule 11 sanctions on appellants' counsel after fair warning, but without the show-cause order required by Rule 11(c)(1)(B), and his quick *sua sponte* reversal thereof was no more than one of those "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display" and not a basis for disqualification. *Liteky*, 510 U.S. at 555–56. Nor is any alleged "snickering from the bench," even if repeated. Reply Brief for Appellants at 14 (No. 01–2042). Therefore Judge Gadola was under no duty to disqualify himself.

## IV

For the foregoing reasons, we **AFFIRM** the district court's judgment on all issues.